## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLA AND ROBERT DOE**, individually, and as Parents and Guardians of their minor children, **ANN DOE**, **EMMA DOE**, **OLIVER DOE**, **WAYNE DOE**, and **SARA DOE**,  } | |
| Plaintiffs,  } | |
| v.  } | |
| **THE DISTRICT OF COLUMBIA** and **MAYOR ANTHONY WILLIAMS** 1350 Pennsylvania Ave., NW, Suite 600 Washington, D.C. 20004  } | |
| **BRENDA DONALD WALKER**, 400 - 6th Street, SW Washington, D.C. 20024  } | CASE No. _____ |
| **SARAH MAXWELL**, 400 - 6th Street, SW Washington, D.C. 20024  } | **JURY DEMAND** |
| **SANDRA JACKSON**, 400 - 6th Street, SW Washington, D.C. 20024  } | |
| **HEATHER STOWE**, 400 - 6th Street, SW Washington, D.C. 20024  } | |
| **TERRI THOMPSON MALLET**, 400 - 6th Street, SW Washington, D.C. 20024  } | |
| } } } } | |

*Complaint - page 1*

**REBEKAH PHILIPPART**,        }
400 - 6th Street, SW        }
Washington, D.C. 20024    }
        }
**DAPHNE KING**,        }
400 - 6th Street, SW        }
Washington, D.C. 20024    }
        }
        }
      Defendants.        }
_____}

## COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

### JURISDICTION AND VENUE

**1.**      This is a civil rights and tort action brought pursuant to the Constitution of the

United States, particularly the First, Fifth, Ninth, and Fourteenth Amendments; the laws

of the United States, particularly 42 U.S.C. §§ 1983, 1985 and 1988, and the laws of the

District of Columbia.   Temporary injunctive relief may be sought by the Plaintiffs in

order to prevent perpetration of additional unlawful actions and to prevent further

harm to fragile minor children.

**2.**      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343(a) and (b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**3.**      The events described herein predominately took place in Washington, D.C.;

venue is therefore proper pursuant to 28 U.S.C. § 1391(b).

**4.**      Plaintiffs request a jury trial on all matters that can be decided by a jury.

## PARTIES

**5.**    Plaintiffs Robert and Carla Doe are adult residents of the District of Columbia.
They are the legal parents and guardians of Emma Doe, Ann Doe, Oliver Doe, Wayne
Doe, and Sara Doe.

**6.**      Plaintiffs Emma Doe (15 years old), Ann Doe (7 years old), Oliver Doe (9 years
old), Wayne Doe (14 years old), and Sara Doe (14 years old) are the minor children of
Robert and Carla Doe.[1]

**7.**      Defendant District of Columbia ("District") is the government of the District of
Columbia.  Defendant Anthony Williams is the Mayor of the District of Columbia.  He
is being sued in his official capacity.

**8.**      The District of Columbia's Child and Family Services Agency ("CFSA"), a
cabinet-level agency of Defendant District of Columbia, is charged to administer the
child welfare support system and to ensure the safety and well being of the children
residing within the District of Columbia.  CFSA is subject to the ongoing jurisdiction of

---

[1]  For convenience, Wayne and Sara are also referred to as the "twins."

*Complaint - page 3*

this Court pursuant to the terms of a Consent Decree entered in a class action lawsuit brought by and on behalf of all children subject to the authority of CFSA. The Court has imposed stringent requirements on CFSA and the District, including the establishment of CFSA as a cabinet-level agency of the District. *See, LaShawn v. Williams*, Civil Action No. 89-1754 (D.D.C. 2000).

**9**. Defendant Brenda Donald Walker is the current Director of CFSA. Director Walker is charged with managing CFSA to ensure that the agency meets its obligations to the families and children of the District who come under the agency's care. See, *e.g.*, D.C. Code § 4-1303.03. Defendant Walker was involved in decisions and actions taken that are the subject of this litigation. She is being sued in her individual and official capacities.

**10.** Defendant Sarah Maxwell is an employee of the District and serves in upper management at CFSA as a Deputy Director. She is being sued in her individual and official capacities.

**11.** Defendant Sandra Jackson is an employee of the District and serves in upper management at CFSA. Defendant Jackson is believed to be the Administrator for Adoption and Foster Care. She is being sued in her individual and official capacities.

**12.**      Defendant Heather Stowe is an employee of the District and serves in upper management at CFSA.  Defendant Stowe is the Administrator for Intakes and Investigations.  She is being sued in her individual and official capacities.

**13.**      Defendant Terri Thompson Mallet is an employee of the District and is the General Counsel for CFSA.    She is being sued in her individual and official capacities.

**14.**      Defendant Daphne King is an employee of the District and serves as an Investigative Social Worker at CFSA.  She is being sued in her individual and official capacities.

**15.**      Defendant Rebekah Philippart is an employee of the District and serves as an Investigative Social Worker at CFSA.  She is being sued in her individual and official capacities.

## FACTS COMMON TO ALL COUNTS

**16.**      Plaintiffs Robert and Carla Doe are adoptive parents.  Four of their five children have been adopted from the foster care system in the District.  Robert and Carla Doe had also served for a number of years as licensed foster parents in the District and in Colorado.

**17.**    Wayne and Sara Doe came to the Doe Family in 2000 and their adoption was finalized in 2001. Wayne and Sara Doe are twins and were nine years old when they joined the Doe family.

**18.**   Unbeknownst to the Does at the time of their adoption, Sara and Wayne had many serious emotional and psychological problems. While the family was generally aware that Sara and Wayne's birth mother had a drug abuse problem and that she had been neglectful, they were not aware of the extensive nature of the abuse and neglect suffered by Sara and Wayne.

**19.**   For example, the Does were led to believe that Sara and Wayne came into the custody of CFSA in October 1996. However, CFSA's records reveal that Sara's and Wayne's birth family became known to the agency as early as June 1991.

**20.**   Coincidentally, about the time that Wayne's and Sara's birth family was becoming known to the District's CFSA, this Court was rendering a decision about the state of the District's foster care system. On April 18, 1991, this Court issued a ruling, following a lengthy trial, in the class action lawsuit that had been filed against the District because of the awful state of its foster care system. *LaShawn A. v. Dixon*, 762 F. Supp. 959 (D.D.C. 1991).

**21**.   The *LaShawn* Court stated, in part, "[t]he Court has found that the DHS has, at least since 1987, consistently failed to comply with the requirements of the federal Adoption Assistance Act, the District's Abuse and Neglect Act, the CFSD Manual of Operations, and reasonable professional standards."  *LaShawn A.*, 762 F.Supp. at 982 – 983.

**22**.   CFSA records (recently obtained) indicate that Sara's and Wayne's birth mother was in contact with  CFSA[2] Intake Office and was placed at the TLC II Shelter at 1451 Chapin St., NW on June 3, 1991.  The record reveals that the twins' birth mother abandoned the shelter on June 26, 1991.  At the time, the twins were approximately five weeks old.

**23**.  On August 27, 1991, the *LaShawn A.* Court issued the first Remedial Order.

**24**.   When Sara's and Wayne's birth mother sought assistance with housing again in February 1992, she was deemed ineligible because she abandoned the previous placement.

---

[2]  Before becoming a cabinet level agency, CFSA was a division of the Department of Human Services.  At that time, the agency was referred to as the Child and Family Services Division [CFSD].  For consistency, throughout this Complaint the agency will be referred to as CFSA.

*Complaint - page 7*

**25**.  A CFSA investigation of the twins' and their birth mother during the period February 19, 1992 through March 16, 1992 discovered that the family had no home and no place to stay.  CFSA social worker Don Pilson noted in a report that "[t]hese children are apparently being dragged from pillar to post, and probably dropped with unwilling caretakers along the way."

**26**.  In a March 14, 1992 memo transferring the case, CFSA social worker Don Pilson summarized his thoughts on what he learned stating "35 year old mother of  9 month old twins, an apparently serious substance abuser, with no stable address."

**27**.  On April 24, 1992, the CFSA child abuse hotline received a call from Howard University Hospital.  The caller reported that Wayne's birth mother brought him to the hospital because he had ingested part of a mouse.  The birth mother was threatening to leave the hospital against the doctor's advice.  She was observed picking Wayne up by the arm in a manner that could cause a sprain.   The notes on this call end with a request to "[p]lease look into this situation."

**28**.  CFSA records for the period June 1991 through May 1993 do not reveal that any safety assessment or risk assessment was done concerning the twins.

**29**. On May 28, 1993, following a self report from Wayne's and Sara's birth mother that she and the children had a place to live and were doing fine, CFSA closed the case.

**30**. On April 5, 1994, the Metropolitan Police Department [MPD] was called to remove the twins' birth mother from an apartment. She was reportedly drunk and hostile. Wayne and Sara were placed in foster care.

**31**. On April 15, 1994, following a home visit, CFSA returned the twins to their birth mother. CFSA records indicate that the birth mother was informed that a Protective Services case would be opened and that the family would be monitored. The report further notes that the birth mother stated that she understood and would be available to be contacted.

**32**. On October 4, 1994, the *LaShawn A.* Court ordered CFSA into limited receivership.

**33**. On March 5, 1994, CFSA records reveal that an anonymous caller reported that Wayne and Sara were often dirty, begging for food and without adult supervision. The caller also stated that the birth mother was a drug or alcohol abuser. At the time, the twins were not yet three years old.

**34**.  CFSA records indicate that a social worker visited only one time, but did not confirm the allegations made in the call.

**35**.  CFSA records indicate that despite the birth mother's commitment in April 1994 to be available to be contacted, CFSA was unaware of her whereabouts from September 1995 until October 29, 1996.

**36**.  On May 22, 1995, the *LaShawn A.* Court ordered CFSA into full receivership because of the agency's failure to comply with the Remedial Order.  See, *LaShawn A. v. Kelly*, 887 F.Supp. 297 (D.D.C. 1995).

**37**.  On October 29, 1996, a family friend brought Wayne to the CFSA Intake Office. The friend reported that the birth mother was a drug abuser and that the twins had been enrolled in school late, thirty days after school started.  The friend also reported to CFSA that the birth mother rented a room in a known crack house.  When the birth mother failed to show up to pick up Sara from school, the twins were placed at St. Ann's Infant Home.   At this time the twins were five years and five months old.

**38**.  On November 4, 1996, CFSA social worker Yvonne Woodard went to the birth mother's address for a home visit.  She noted "a lot of male and female traffic in and out of the home."  Ms. Woodard met a young woman outside the house who claimed to be

the birth mother's roommate and who "appeared to be under the influence of some type of substance."

**39**.    On December 3, 1996, CFSA social worker Yvonne Woodard and supervisory social worker Ilia Rivera Sanchez prepared a transfer summary of Wayne's and Sara's case.  In the summary the social workers noted that the birth mother was unable to provide a safe and stable living environment for her children.

**40**. On February 14, 1997, Wayne and Sara were placed in a foster home in Maryland. They remained in this foster home until they were adopted.

**41**. Prior to their placement in a foster home, comprehensive psychological or psychiatric assessments of the twins were not performed.  In addition,  forensic interviews or assessments of the details of their abuse and neglect were not performed.

**42**. On March 3, 1997, the Methodist Board of Child Care ("BCC") assumed family responsibility for Wayne, Sara, and their birth mother.  BCC is a licensed child placing agency and a contractor to CFSA.

**43**. On May 19, 1997, and following an evidentiary hearing, the D.C. Superior Court determined that Wayne and Sara were neglected children.

*Complaint - page 11*

**44**.  The twins birth mother underwent psychological and psychiatric testing and she was ordered to undergo drug testing.  On June 26, 1997, a psychological evaluation was performed and found that the birth mother could not adequately care for her children at that time.  The psychiatric assessment diagnosed Dysthymic Disorder and Personality Disorder.

**45**.  During a July 2, 1997 supervised visit between the twins and their birth mother, the social worker noted that the birth mother inappropriately tickled Wayne in "his genital area."

 **46**.  In July 1997, a psychological assessment of Sara found that a psychosocial stressor for her was her early neglect and separation from her birth mother and her birth mother's alcohol and drug use.   An assessment of Wayne produced the same diagnoses.

**47**.  Efforts continued through 1997 and part of 1998 to reunify Wayne and Sara with their birth mother.  However, on May 4, 1998, the twins' goal was changed from family reunification to adoption.

**48**.  In October 1998, the twins then-Guardian *Ad Litem* and her husband filed a petition to adopt the Wayne and Sara.  However, the GAL noted that if the foster parents chose

to adopt the children that she would withdraw her adoption petition.  A new GAL was appointed to represent the children.

**49**.  On November 17, 1998, after months of deliberation, Wayne's and Sara's foster parents advised their new Guardian *Ad Litem* that they wanted to adopt the twins.

**50**.  However, neither the former GAL nor the foster family adopted the twins.

**51**.  In May 2000, the Doe family agreed to bring Wayne and Sara into their home as foster children with the intention of adopting them.

**52**.  The Doe family filed an adoption petition in the D.C. Superior Court.  The adoption was contested by Wayne and Sara's birth mother.

**53.**  A March 21, 2000 pre-adoption report prepared by the Methodist Board of Child Care stated that both Sara and Wayne were educationally on target and that neither child had any foreseeable medical, developmental, or health concerns.

**54**.  The adoptions of Wayne and Sara were approved by the D.C. Superior Court in July 2001.

55. Wayne and Sara had difficulties in their new family almost from the start. Not knowing any of the facts recited in paragraphs 22, 24 - 31, 33 - 35, 38, 44, and 45 the Does attributed their behaviors to adjustments to a new family and to having new parents. Consequently, the Does participated with the children in attachment therapy for a period of six to eight months. The therapy was generally helpful but did not seem to break through the emotional barriers Wayne and Sara had erected.

56. During the period 2000 through 2003, the Does tried different therapists and approaches to try and help Wayne and Sara. None of these efforts seemed to make any significant difference in Wayne's and Sara's emotional or psychological condition.

57. In particular, Wayne's behavior was worsening and he was becoming difficult to manage and was not receptive to honest communication. The family located a therapeutic summer program for Wayne and requested that CFSA pay for it. After considerable struggle, CFSA agreed to pay for the camp. Wayne spent six weeks in the Summer of 2003 at a camp designed for children with difficult emotional issues.

58. Upon his return from camp, Wayne was better behaved for a short time. Then as school began in 2003, Wayne's behavior began to deteriorate again. He aggressively displayed anger, lied, and was stealing from his family. Wayne's outbursts would often scare Oliver and Ann and made family life generally unpleasant.

*Complaint - page 14*

**59**. Sara was also having difficulty. It was clear that she was not attaching to her adoptive family and that she was lying, stealing, and generally being deceptive. However, Sara was more outwardly compliant so her problems did not seem as urgent as Wayne's.

**60**. Due to the severe nature of Wayne's issues and his disruption of the family, it was decided that intensive therapeutic services would be sought on an emergency basis. Those services were obtained through Adoption Attachment Partners, a therapy group specializing in attachment disorders and relationship building.

**61**. Wayne and his parents attended three consecutive several-hour-long sessions. The focus of these sessions was to aid Wayne in disclosing problems that were at the root of his terrible behavior. Through these intensive sessions Wayne revealed that: (a) when he was about four or five years old he witnessed the murder of a boy he was walking with in a drive by shooting; (b) he was terrified to discuss the murder because he believed that if he discussed it he might also be murdered; and ( c ) when he was living with his birth mother he was sexually abused by a woman who he would not or could not identify. These revelations, although tremendously painful, seemed to help Wayne and initially improved his behavior.

**62**. The Does then began having Sara attend therapy with the same therapist that Wayne was seeing.

**63**.   Unfortunately, Wayne's behavior again spiraled down and out of control.   In early September 2004, the Does then placed him with his respite care provider who was experienced in helping children with attachment disorder and sexual abuse issues.

**64**. Sometime after placing Wayne in respite care and during the course of individual therapy, both Wayne and Sara revealed that they had been having sexual contact with each other and with Oliver and Ann, the Does other adopted children.

**65**. On September 27, 2004, Plaintiffs Robert and Carla Doe hand delivered a letter to CFSA Acting Director Brenda Donald Walker and CFSA Adoption Services Program Manager Sharon Knight seeking emergency assistance.  The need for emergency assistance was prompted by serious problems within the family caused by Wayne and Sara.

**66**.    In their September 27, 2004 letter to CFSA, Robert and Carla Doe explained that since coming to their family Wayne and Sara Doe had presented emotional and behavioral issues that had been difficult to address.  They further explained that different therapists and efforts had been made to help Wayne and Sara but little had

helped.  In fact, Wayne's behavior had become so unmanageable at times because of angry outbursts and threatening actions that he had to be removed from the family from time to time to a therapeutic respite home recommended by his therapists.

67.     In addition to Wayne's anger issues, both Wayne and Sara had engaged in abnormal amounts of lying, stealing and other deceptive behaviors.

68.     Plaintiffs Robert and Carla Doe further explained in their September 27, 2004 letter to CFSA that as a result of the serious behavioral problems they pursued intensive therapy for initially Wayne Doe and then Sara Doe.  While in therapy, Wayne and Sara revealed that they had been physically and emotionally abused by their foster family and had been horrendously sexually abused by their birth mother and/or other adults. These facts were unknown to Robert and Carla Doe at the time they adopted Wayne and Sara, and were unknown until approximately September 2004.

69.     Plaintiffs Robert and Carla Doe further explained in their September 27, 2004 letter to CFSA that during recent therapy sessions Wayne and Sara Doe revealed that they had been abusive to the Doe's two younger children, Ann and Oliver Doe.  The Doe's explained in the September 27, 2004 letter to CFSA that Wayne had been placed outside the household by the Does themselves, and that the Does desperately needed

financial support for residential care and therapy. The Does informed CFSA that Sara

Doe was in the home but also needed residential care and therapy.


70.    Plaintiffs Robert and Carla Doe also explained in their September 27, 2004 letter

to CFSA that the revelations of Wayne and Sara were shocking and traumatized the

entire family. The Doe's advised that they had no ability financially or emotionally to

undertake the proper residential and other treatments needed for Wayne and Sara.


71.    Plaintiffs Robert and Carla Doe concluded their September 27, 2004 letter

to CFSA by requesting immediate financial assistance. They offered to make therapists

and other professionals available to the agency to discuss treatment and other options

for Wayne and Sara Doe.


72.    As a result of the Doe's September 27, 2004 letter, a meeting was scheduled at

CFSA on October 1, 2004. The meeting was chaired by Defendant Sandra Jackson and

attended by CFSA employees Dr. Tracey Campfield, Dr. Cheryl Williams, and Sharon

Knight. Robert Doe attended the meeting for the family with two of the children's

therapists.

73.    While the October 1, 2004 meeting was cordial, several of the CFSA employees

expressed concern or made statements suggesting a concern regarding whether the

Does were blaming the agency for the problems caused by Wayne and Sara Doe.

During the meeting, Plaintiff Robert Doe explained that as a precaution Sara Doe had

been moved out of the house and was staying with a relative, but the relative could not

serve as a long term placement option.   The meeting concluded with a pledge by

Defendant Sandra Jackson to get back to the family promptly about finding another

appropriate placement for Sara Doe and to advise how CFSA might help regarding the

other issues.


74.    On October 3, 2004, pursuant to a request made during the October 1st meeting,

the Doe children's therapists sent diagnostic summaries containing recommendations

and assessments to CFSA via facsimile.  Importantly, the summaries strongly

recommended that all the children remain with Robert and Carla Doe, but that Wayne

and Sara Doe needed to be placed in separate residential care and continue with their

therapy.


75.    On or about October 5, 2004, Defendant Sandra Jackson arranged a conference

call involving the same CFSA employees as attended the meeting on October 1, 2004

meeting but also including a person from the General Counsel's office.  Robert Doe

participated in the call and raised many questions.  During the call, CFSA

recommended that Wayne and Sara be placed in a therapeutic foster home together and that the Doe's should sign a Voluntary Placement Agreement which would place Wayne and Sara in CFSA's care for up to sixty days. CFSA would not state the location of the foster home, would not agree to continue the children's therapy, and would not explain how Wayne and Sara would be kept safe from each other.    Robert Doe advised the agency that he would have to consider what CFSA was proposing and get back to agency.

**76.** On October 7, 2004, CFSA intake social worker Delores Williams visited Plaintiff Robert and Carla Doe's home and talked with them about the abuse issues. Ms. Williams met Emma, Ann, and Oliver Doe, and had an opportunity to talk with the children and inspect the home. Ms. Williams was advised of the precautions that had been taken as a result of the revelations of abuse among the children. These precautions included, advising the children's schools in writing, placing an alarm on the bedroom door of Oliver, continuing therapy for all the children, maintaining Wayne and Sara outside the home, and closely supervising Oliver and Ann.

**77**. CFSA records reveal that entries were made by Ms. Williams' on October 7, 2004 in the FACES database describing the Does' reactions to the revelations and the steps the family took immediately to keep all of their children safe.

*Complaint - page 20*

**78**. An Investigation Summary (report # 609579) was prepared following the completion of Delores Williams' investigation.  The report states, in part:

(a) "Family has provided outside placements for two older children.  Parents have secured alarm system to monitor younger children's activity at night.  Parents have taken appropriate steps to ensure supervision of children at all times." (p.4)

(b) "Based upon the information available at this time the current level of risk to the children in this family is low."  (p.5)

( c ) "There is no evidence found that would support any allegations of failure to protect or lack of supervision on the part of either parents."  (p. 10)

**79**.    On October 14, 2004, Plaintiff Robert Doe faxed a letter to Defendant Sandra Jackson asking that CFSA reconsider its proposal for Wayne and Sara Doe.  In the letter Robert Doe emphasized that CFSA had an obligation under the *LaShawn* case to assist the family and provide adequate support for Sara and Wayne.  He proposed that a very good placement be located for Sara and that Wayne remain in his  placement.  Mr. Doe further proposed that CFSA pay for the placements, transportation, and continued therapy for the all members of the family.  Finally, Mr. Doe emphasized the trauma that the family was already enduring and asked that the requested services be provided in order to allow the family to heal.

**80.**  On October 9, 2004, at the urging of CFSA investigative social worker Delores Williams, Robert and Carla Doe agreed to bring the two younger children, Ann and Oliver Doe, to be interviewed at the Safe Shores Children's Advocacy Center.   Persons in attendance were Metropolitan Police Department Detective James L. Goldring, CFSA Social Worker Delores Williams, and Assistant Attorney General ("AAG") Alexandra Kutz.

**81.**   Plaintiffs Robert and Carla Doe were advised that the interviews would be video taped and observed by the officials present.   Mr. and Ms. Doe requested that an AAG from the abuse and neglect section of the District's Office of Attorney General be present.  Calls were made by the officials present and Carla Doe to the abuse and neglect section.  However, no AAG for abuse and neglect ever appeared for the interviews.

**82.**   Plaintiffs Robert and Carla Doe asked those officials present if they could: (a) be present with the children during the interview, (b) observe the interview with the officials, and (c) be given a copy of the video tape.  These requests were denied and Mr. and Ms. Doe objected to going forward without being able to at least observe what was being done to their children as the children had already been severely traumatized. CFSA social worker Williams then advised that the agency would take the Doe's children from them if they did not agree to allow the interviews to proceed.  Under

duress, Mr. and Ms. Doe allowed the interviews to proceed and allowed medical examination information to be collected regarding Ann and Oliver Doe.

83.  On the morning of October 19, 2004, Plaintiff Robert Doe telephoned Defendant Sandra Jackson and advised that Juvenile law enforcement officials were now involved in Wayne and Sara's case.  Robert Doe asked Defendant Jackson to ensure that CFSA provided support for Wayne and Sara in order to create the best chance for them to receive therapeutic placements, continue with therapy, and receive other necessary services.  Defendant Jackson agreed that CFSA would confer with AAG Kutz.

84.  At approximately 2:00 p.m. on October 19, 2004, Defendants Sandra Jackson and Heather Stowe telephoned Robert and Carla Doe.  They stated that the purpose of the call was to ask that Mr. and Ms. Doe place four of their children into voluntary care pending an investigation about allegedly inadequate parental supervision.  No explanation was given by Defendants Jackson and Stowe as to how the Doe's children were in any danger.  Nor, were services offered to preserve the family while alleviating the alleged danger.  This communication, now threatening to remove Ann and Oliver from the Doe's home, was shocking to the family.  Plaintiffs Robert and Carla Doe asked Defendants Jackson and Stowe for time to consider CFSA's request for voluntary placement and call the agency back.

*Complaint - page 23*

85.    Plaintiff's Robert and Carla Doe now under threat that their children were going to be taken from them were forced to hire a lawyer and called many friends and family to provide possible placements for their children.    The Doe's overriding concern was that none of the children, but especially Ann and Oliver, not be subjected to further trauma.

86.    Plaintiffs Robert and Carla Doe with the assistance of counsel, Harvey Schweitzer, negotiated with CFSA through Defendants Jackson and General Counsel Terri Thompson Mallet over the course of the following  twenty-four hours.  At no time during the discussions with the Defendants did the Defendants identify any facts or make any arguments that suggested a legitimate basis for taking Robert and Carla Doe's children.

87.    In fact, during the course of the discussions on October 19th and 20th, the Defendants and other CFSA employees engaged in a campaign to remove the Doe's counsel from the case by making a bogus claim of conflict of interest.  This ploy resulted in hours being lost while Mr. Schweitzer discussed CFSA's claims with his other client. One or more CFSA employees had called counsel's other client in order to attempt to cause friction with Mr. Schweitzer and the Doe family.  Fortunately, the situation was resolved amicably among the clients and counsel.

88.    The Defendants and other CFSA employees were attempting to strip the Doe's of legal representation at a critical moment so they could take the Doe's children without facing a timely legal challenge.

89.    Plaintiffs suggested that their children could be brought to D.C. Superior Court the next morning while all of the issues that CFSA allegedly had to address could be worked out and that the proper and least harmful placement of the children could be accomplished through involvement of the Court.  Plaintiffs also advised the Defendants of other qualified persons who could take at least Ann and Oliver overnight.  For example, Plaintiffs had a family friend who is a licensed social worker, a former CFSA employee,  and a lawyer who also had top secret government clearance.  This friend was refused as an immediate overnight placement option.  However, within a few hours on October 20, 2005, Defendants approved Carla Doe's mother as a possible placement but gave no guarantee that the agency would use her as a placement.

90.    All attempts at negotiation broke down when Defendant Mallet insisted that Plaintiff Oliver Doe would be placed in an undisclosed foster home at least overnight.  When Plaintiff Robert Doe told Defendant Mallet that the children would not be made available to be taken overnight, Defendant Mallet stated words to the effect that any efforts to obstruct CFSA's action would result in arrest.

91.    Defendant Mallet was advised by the Does' lawyer that CFSA needed a court order to take action and immediately remove any of Robert and Carla Doe's children. Defendant Mallet refused to seek the intervention and approval of the court.

92.    Under duress and the threat of arrest, and after speaking with the children's therapists, Plaintiffs Robert and Carla Doe agreed to make Ann and Oliver Doe available for removal by CFSA on October 20, 2004 at 9 p.m.  The Does also advised the Defendants of the location of Wayne and Sara Doe who had been removed from the home in order to ensure their safety and the safety of the other children.  Mr. and Ms. Doe had to prepare Wayne and Sara by contacting their care givers to advise that the Defendants might be picking them up and would be taking them to an undisclosed foster home.  This caused Plaintiffs Robert and Carla Doe and Plaintiffs Ann, Oliver, Wayne and Sara Doe severe emotional distress and anxiety.

93.    At or around 9 p.m. on October 20, 2004, Defendants Daphne King and Rebekah Philippart came to Plaintiff Robert and Carla Doe's home to take four of their children. Defendants King and Philippart presented the Doe's with a "Notice to Appear in Family Court."  The notice concerned Plaintiffs Wayne Doe, Sara Doe, Ann Doe, and Oliver Doe.  The Notice is a form with certain information hand written into provided spaces.  The Notice advised that the Doe's children were being removed "due to

imminent danger."   The Notice was not signed by any CFSA employee or official.  The signature lines were left blank.

94.     Plaintiff Robert Doe asked the Defendants to tell him what imminent danger was being addressed.  The Defendants replied that they did not know.

95.  Plaintiff Robert Doe asked the Defendants what was the legal basis for taking their children.  The Defendants replied that they did not know and they referred to the unsigned Notice form.

96.  Plaintiff Robert Doe then advised  Defendants King and Philippart that they were engaging in an improper act and could be held personally liable for their actions.  The Defendants provided no substantive response.

97.     Plaintiffs Robert and Carla Doe then further prepared Ann and Oliver to leave with the social workers.  Ann and Oliver were then taken against their will and forced into cars driven by the Defendants.  They cried horribly but were reluctantly urged to go by their distressed parents.

98.  Two unidentified Social Workers were also present at the Doe's home and are believed to have assisted  Defendants King and Philippart throughout the evening.

99.    The Social Worker also picked up Sara Doe from Carla Doe's mother's home, and against Sara Doe's will and without the consent of Plaintiffs Robert and Carla Doe took her away to an undisclosed foster home.

100.    The children, Ann, Oliver, and Sara, were taken against their will and without consent to Children's Hospital were they underwent invasive physical examinations. Plaintiffs Oliver and Sara Doe were placed in undisclosed foster homes after 12 midnight.  Fortunately, Plaintiff Ann Doe was placed with Plaintiff Carla Doe's mother.

101.    The taking of Ann, Oliver and Sara Doe on October 20, 2004 was done negligently and was a malicious and invasive action designed to further harm Robert and Carla Doe and their children.  These actions were orchestrated by Defendants Walker, Maxwell, Jackson, Stowe, and Mallet, and were carried out by other Defendants. Although Wayne Doe was listed on the Notice as being in imminent danger he was never taken into custody.

102.    There was no imminent danger nor any factual or legal basis for taking Plaintiffs Ann, Oliver, and Sara Doe from their homes.

**103.**    At the time the children were removed from their home, the Defendants all knew that there were no bases to claim that the children were in "imminent danger" nor were there any other factual or legal bases for taking such drastic action.

**104**. On October 21, 2004, Defendant District of Columbia and its employees filed four complaints against Robert and Carla Doe.  The complaints falsely alleged that Robert and Carla had sexually abused Sara, Wayne, Oliver, and Ann.

**105**. The complaints also failed to claim that any of the children were in imminent danger.

**106**. The complaints were signed by two social workers whose names are illegible on the complaints.  However, the persons who signed appear to be signing the complaints on behalf of Delores Williams and Michele Brigman.

**107.**    In addition, October 21, 2004, Plaintiffs and Defendants were scheduled to appear in D.C. Superior Court at 11:00 a.m.  None of the individual Defendants appeared. Defendant District of Columbia appeared and was represented by abuse and neglect section AAG Debra Dickstein.  The District appeared at court over one hour late.  When AAG Dickstein approached the Plaintiffs before the case was called, she advised that the case was being "no papered."  In other words, no petition was drafted or filed.

*Complaint - page 29*

**108**.   Defendant Walker in her role as Director of CFSA is the policymaker for the agency.  Defendant Walker was consulted and aware of and approved of all actions being taken or proposed regarding the Plaintiffs.

**109.**    Defendant Mallet in her role as General Counsel of CFSA is the chief legal officer and policymaker for CFSA.  Defendant Mallet was consulted and aware of and approved of all actions being taken or proposed regarding the Plaintiffs.

**110.**    Defendant Maxwell is a Deputy Director at  CFSA and has direct responsibility over persons involved in taking the Does' children.  Defendant Maxwell is a policymaker for CFSA.  Defendant Maxwell orchestrated and/or approved the actions taken against the Plaintiffs.

**111.**    Defendant Jackson is the Administrator of CFSA's Adoption and Foster Care Administration and is a policymaker for CFSA.  Defendant Jackson orchestrated and approved the actions taken against the Plaintiffs.

**112.**    Defendant Stowe is the Administrator for Intakes and Investigations for CFSA and is a policymaker for CFSA.  Defendant Stowe orchestrated and approved the actions taken against the Plaintiffs.

113.    Immediately following the October 21st hearing, Plaintiffs Robert and Carla Doe met with CFSA Supervisory social worker Michele Brigman.  Ms. Brigman assisted the Does in getting their son Oliver out of foster care.   Oliver wasn't returned to his parents until approximately 4:00 p.m.

114.    Ms. Brigman also advised Robert and Carla Doe that CFSA had arranged a placement in a good therapeutic foster home for Plaintiff Sara Doe.  Plaintiffs Robert and Carla Doe then agreed to voluntarily place Sara in a therapeutic foster home in order to allow her to receive additional assistance.  The Voluntary Placement Agreement provides that Robert and Carla Doe can request the return of Sara to their custody at any time.  In addition, the agreement provides that medical and other treatments can be arranged by CFSA but may not be undertaken without parental consent, except in an emergency.

115.    On October 22, 2004, District of Columbia Assistant Attorney General (AAG) Alexandra E. Kutz, signed an affidavit and request for custody order for Sara Doe.  Sara was charged with allegedly fondling or touching the genitals of her younger siblings. The affidavit and request for custody order alleged that Sara's alleged touching constituted Second Degree Child Sex Abuse.  The custody order request is the equivalent of seeking an arrest warrant.  On October 25, 2004, an Order for Custody was signed by a District of Columbia Superior Court Judge.

*Complaint - page 31*

116.   Similarly, on October 22, 2004, AAG Kutz  signed an affidavit and request for custody order for Wayne Doe.   Wayne was charged with allegedly fondling or touching the genitals of her younger siblings.  The affidavit and request for custody order alleged that Wayne's alleged touching constituted Second Degree Child Sex Abuse.  On October 25, 2004, an Order for Custody was signed by a District of Columbia Superior Court Judge.

117.   On October 27, 2004, Plaintiff Sara Doe was picked up by Social Worker Mable Boler after school.   Boler, after making one or more stops, took Plaintiff Sara Doe to Children's Hospital for a physical examination.  Plaintiffs Robert and Carla Doe were not contacted about this medical examination and they did not provide their consent.

118.    Plaintiff Sara Doe was picked up from school by Social Worker Boler at approximately, 5:00 p.m. and was eventually taken to Children's Hospital.   At approximately 8:00 p.m., while still waiting at Children's Hospital to be seen, Boler called Sara Doe's foster parent to indicate that Plaintiff Sara Doe would be home soon. Plaintiff Sara Doe was made to wait at the hospital until almost 2:00 a.m. before she was seen by the doctors.  Plaintiff Sara Doe was scared and was subjected to a physical exam against her will and without her parents' consent.  Plaintiff Sara Doe was asked personal questions by the doctors and completed the exam sometime after 3:45 a.m.

119.    Plaintiff Sara Doe's foster parent became worried and called a CFSA supervisory social worker on duty and her foster care social worker.  Neither social worker assisted her in finding out the whereabouts of Plaintiff Sara Doe.  Plaintiff Sara Doe's foster parent then called the police to report her missing and as she was concluding the call Defendant Boler pulled up to the house with Plaintiff Sara Doe.  When Boler brought Sara into the house she advised the foster parent that Sara had not had dinner.  The time at this point was approximately 4:20  a.m.

120.    During this unauthorized medical examination, Plaintiff Sara Doe was subjected to violation of her constitutional rights, false imprisonment, invasion of privacy, assault, battery, and intentional infliction of emotional distress.

121.    On November 16, 2004, Sara and Wayne Doe were taken into custody and processed through the District of Columbia Metropolitan Police Department's juvenile processing facility located at 501 New York Ave., NW, Washington, D.C.

122.    Sara Doe was taken into custody at approximately 7:30 a.m., and Wayne Doe was taken into custody at approximately 9:30 a.m.

**123.**  Sara and Wayne's cases were not called until approximately 4:00 p.m.  At the conclusion of their cases, Sara and Wayne were released to Robert and Carla Doe to be placed with foster parents.  The cases were concluded at approximately 4:30 p.m.

**124.**  Sara and Wayne Doe were not released from custody until approximately 7:30 p.m.  During their stay in custody the children were scared and believed that they would be left in jail or may not be allowed to return to their foster homes.

**125.**  Specifically, both Sara and Wayne Doe were restrained or placed in a cell during the 10 - 12 hours they spent in custody.  At one point, Plaintiff Wayne Doe was shackled and subjected to other juvenile inmates who spat upon him and were violent or disruptive.

**126.**   At all times relevant to this Complaint all of the Defendants were aware of the ongoing trauma being experienced by the Doe family.  Specifically, the Defendants were aware of the particular emotional injuries that had been suffered by each of the Doe children and the sensitive natures of the children.  Despite this information, and in a clear effort to cause as much emotional damage, pain and suffering as possible, the Defendants took the negligent actions described thereby inflicting great injury and further trauma on each of the Plaintiffs.

**VIOLATIONS OF PLAINTIFFS'
RIGHTS UNDER THE U.S. CONSTITUTION
PURSUANT TO 42 U.S.C. §§ 1983, 1985**

### Count I

**127.** Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**128.** Defendant District of Columbia acted with deliberate indifference toward the constitutional rights of all of the Plaintiffs in that it failed to: (a) properly train its employees; (b) properly supervise its employees; and (c) failed to protect Plaintiffs Robert and Carla Doe and their children from harm. Such deliberate indifference amounts to violations of the Plaintiffs rights under the Fifth Amendment of the U.S. Constitution, proximately causing injury to the Plaintiffs. Therefore, Defendant District is liable to the Plaintiffs for violations of their civil rights under 42 U.S.C. § 1983.

### Count II

**129.** Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**130.** Defendant District of Columbia and individual Defendants Walker, Maxwell, Jackson, Mallet, and Stowe acted with deliberate indifference toward the constitutional rights of all of the Plaintiffs when they unlawfully threatened and conspired to remove and then removed Plaintiffs Ann, Oliver and Sara Doe from their homes. Such deliberate indifference amounts to violations of the Plaintiffs rights under the Fifth

Amendment of the U.S. Constitution, proximately causing injury to the Plaintiffs.
Therefore, the Defendants are liable to the Plaintiffs for violations of their civil rights
under 42 U.S.C. § 1983.

## Count III

**131.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**132.**    Defendant District of Columbia and the individual Defendants acted with
deliberate indifference toward the constitutional rights of all of the Plaintiffs and
purposely violated the law when they unlawfully threatened to remove and then
removed Plaintiffs Ann, Oliver and Sara Doe from their homes.   Such deliberate
indifference and intentional violations of law shocks the conscience and amounts to
gross violations of the Plaintiffs' rights to Substantive and Procedural Due Process under
the Fifth Amendment of the U.S. Constitution, proximately causing injury to the
Plaintiffs.  Therefore, Defendant District and the individual Defendants are liable to the
Plaintiffs for violations of their civil rights under 42 U.S.C. § 1983.

**Count IV**

**133.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.


**134.**    Plaintiffs Robert and Carla Doe petitioned Defendant District of Columbia, through CFSA, for assistance as CFSA is required to provide to adoptive families under District of Columbia law this Court's Orders in *LaShawn*.  Individual Defendants Walker, Maxwell, Jackson, Mallet, and Stowe are management officials within CFSA with policymaking authority.   In response to the Doe family's requests for assistance the District and individual Defendants Walker, Maxwell, Mallet, Jackson, Stowe, and others whom they directed retaliated against the Plaintiffs.  Such retaliation is a deliberate violation of the Plaintiffs' rights under the First Amendment of the U.S. Constitution, proximately causing injury to the Plaintiffs.  Therefore, Defendant District and individual Defendants Walker, Mallet, Jackson, and Stowe are liable to the Plaintiffs for violations of their civil rights under 42 U.S.C. § 1983.


**Count V**

**135.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.


**136**.  Plaintiffs Robert and Carla Doe engaged in speech protected by the U.S. Constitution when they raised concerns to Defendant District of Columbia, through CFSA, regarding the failure of the agency to properly assess Sara and Wayne prior to

their adoption and the need for comprehensive post-adoption services and support. Individual Defendants Walker, Maxwell, Jackson, Mallet, and Stowe are management officials within CFSA with policymaking authority.   In response to the Doe family's statements the District and individual Defendants Walker, Maxwell, Mallet, Jackson, Stowe, and others whom they directed retaliated against the Plaintiffs.  Such retaliation is a deliberate violation of the Plaintiffs' rights under the First Amendment of the U.S. Constitution, proximately causing injury to the Plaintiffs.  Therefore, Defendant District and individual Defendants Walker, Mallet, Jackson, and Stowe are liable to the Plaintiffs for violations of their civil rights under 42 U.S.C. § 1983.

## Count VI

**137.**   Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**138.**   Defendant District of Columbia and the individual Defendants  acted with deliberate indifference toward the constitutional rights of Plaintiffs Ann, Oliver, and Sara Doe when they unlawfully threatened to remove them and then removed Plaintiffs Ann, Oliver and Sara Doe from their homes.   Such deliberate indifference amounts to violations of the Plaintiffs rights to be free from unreasonable search and seizure as provided by the Fourth Amendment of the U.S. Constitution, proximately causing injury to the Plaintiffs.  Therefore, the Defendants are liable to Plaintiffs Ann, Oliver, and Sara Doe for violations of their civil rights under 42 U.S.C. § 1983.

## Count VII

**139.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**140**.  Defendant District of Columbia and the individual Defendants  acted with deliberate indifference toward the constitutional rights of Plaintiffs Robert, Carla, Ann, Oliver, and Sara Doe when they unlawfully threatened to remove the children and then removed Plaintiffs Ann, Oliver and Sara Doe from their homes.   Such deliberate indifference amounts to violations of the Plaintiffs rights to Due Process of law as provided by the Fifth and Fourteenth Amendments of the U.S. Constitution, proximately causing injury to the Plaintiffs.   Therefore, the Defendants are liable to Plaintiffs Ann, Oliver, and Sara Doe for violations of their civil rights under 42 U.S.C. § 1983.

## Count VIII

**141.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**142.**    Defendant District of Columbia and individual Defendants acted with deliberate indifference toward the constitutional rights of Plaintiffs Ann, Oliver, and Sara Doe when they unlawfully threatened to remove and then removed Plaintiffs Ann, Oliver and Sara Doe from their homes.   Such deliberate indifference amounts to violations of the Plaintiffs' right to privacy as provided by the First and Ninth Amendments of the U.S. Constitution, proximately causing injury to the Plaintiffs.   Therefore, the Defendants

*Complaint - page 39*

are liable to Plaintiffs Ann, Oliver, and Sara Doe for violations of their civil rights under 42 U.S.C. § 1983.

## Count IX

**143.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**144.**    Defendant District of Columbia and individual Defendants acted with deliberate indifference toward the constitutional rights and conspired to violate the rights of Plaintiffs Sara and Wayne Doe when the Defendants decided to seek their arrest and prosecute them in the juvenile system the day following the "no papering" of the unjustified claim of imminent danger against their parents.   The juvenile action initiated by the District was taken in retaliation for Robert and Carla Doe's petition to CFSA for assistance and/or discriminates against Sara and Wayne Doe based upon their status as adopted children, and denies the children and their parents equal protection.   The Defendants actions proximately caused injury to the Plaintiffs.  Therefore, the Defendants are liable to Plaintiffs Sara Doe for violations of their civil rights under 42 U.S.C. §§ 1983, 1985.

## Count X

**145.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**146.**    Defendant District of Columbia acted with deliberate indifference toward the constitutional rights of Plaintiffs Robert, Carla, Ann, and Oliver Doe when the Defendant obtained under duress the custodial interviews of 7 year old Ann and 9 year old Oliver Doe.  These custodial interviews violated Oliver Doe's Fifth Amendment right against self-incrimination, and violated Robert, Carla and Ann Doe's right to privacy as provided by the First and Ninth Amendments of the U.S. Constitution, proximately causing injury to the Plaintiffs.  Therefore, the Defendants are liable to Plaintiffs Robert, Carla, Ann, and Oliver Doe for violations of their civil rights under 42 U.S.C. § 1983.

## INTENTIONAL TORTS

### Count XI - Civil Conspiracy

**147.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**148.**    The District of Columbia and the individual Defendants conspired to and/or took direct action to violate the laws and policies of the District of Columbia, violate federal laws, and violate the Plaintiffs' constitutional rights **.   The conspiracy undertaken by the individual Defendants resulted in the infliction of harm to the Plaintiffs.

## Count XII - Assault

**149.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**150.**    The District of Columbia and the individual Defendants, as described in the preceding statement of facts, intentionally and unlawfully caused apprehension of imminent physical harm to Plaintiffs Ann, Oliver, Sara, and Wayne Doe.   As a result of the acts of the individual Defendants, Plaintiffs suffered and continue to suffer anxiety, pain, post-traumatic stress, humiliation, fear, and other damages.

## Count XIII - Battery

**151.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**152.**    The District of Columbia and the  individual Defendants or their agents, as described in the preceding statement of facts, intentionally and unlawfully touched and restrained Plaintiffs Ann, Oliver, Sara, and Wayne Doe without the consent of their parents.   As a result of the acts of the individual Defendants, Plaintiffs suffered and continue to suffer anxiety, pain, post-traumatic stress, humiliation, fear, and other damages.

## Count XIV - Intentional Infliction of Emotional Distress

**153.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**154.**    The acts of the District of Columbia and the individual Defendants or their agents, as described in the preceding statement of facts, were extreme, outrageous, and intentional, and/or were undertaken in reckless disregard and deliberate indifference to the consequences and impacts those acts would have on the Plaintiffs.  As a result of the acts of the individual Defendants and their agents, the Plaintiffs suffered, continue to suffer, and will suffer in the future anxiety, pain, post-traumatic stress, humiliation, fear, and other damages.

## Count XV - Negligence

**155.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**156**.  The acts of the District of Columbia and the individual Defendants or their agents, as described in the preceding statement of facts and the requirements of District of Columbia and Federal laws demonstrate that the Defendants had a duty to properly evaluate and assess Sara and Wayne Doe before they were placed for adoption.   That duty was breached when the Defendants negligently and recklessly placed Sara and Wayne with the Doe family.  As a result of the Defendants' breach of duty the Plaintiffs

suffered, continue to suffer, and will suffer in the future anxiety, pain, post-traumatic stress, humiliation, fear, and other damages.

## Count XVI - Misrepresentation

**157.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**158**.    The District of Columbia and the individual Defendants or their agents made false statements or omissions of fact to Plaintiffs Robert and Carla Doe concerning the overall health and family history of Sara and Wayne violating their duty of reasonable care. These false statements or omissions were detrimentally relied upon by Carla and Robert Doe when they adopted and sought therapy for Sara and Wayne.  As a result of Plaintiff Robert and Carla Doe's reliance on these false statements and omissions the Plaintiffs suffered, continue to suffer, and will suffer in the future anxiety, pain, post-traumatic stress, humiliation, fear, financial losses and other damages.

## Count XVII - Malicious Prosecution and Abuse of Process

**159.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**160.**    The acts of the District of Columbia and the individual Defendants or their agents, as described in the preceding statement of facts, resulted in the initiation of a civil

proceeding in the D.C. Superior Court claiming that Robert and Carla Doe had abused or neglected some or all of their children.  There was no factual or legal bases for the claims of abuse or neglect.  The Defendants acted with malicious intent in planning and initiating the action against Plaintiffs Carla and Robert Doe.  The proceeding was terminated in favor of the Does.  As a result of the Defendants' actions the Plaintiffs suffered, continue to suffer, and will suffer in the future anxiety, pain, post-traumatic stress, humiliation, fear, financial losses and other damages.

### Count XVIII -  Selective Prosecution

**161.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**162**.   The acts of the District of Columbia and the individual Defendants or their agents, as described in the preceding statement of facts, resulted in the initiation of a juvenile criminal proceeding against Sara and Wayne in the D.C. Superior Court.   Other similarly situated children are not prosecuted for such offences, particularly when the children are subjects of an open abuse or neglect case.   The Defendant District of Columbia brought the juvenile criminal cases against Sara and Wayne because of the Defendants' failure to successfully establish an abuse and neglect case against their parents, and in retaliation for their parents' insistence on excellent services for them and the rest of the family.     As a result of the Defendants' actions the Plaintiffs suffered,

continue to suffer, and will suffer in the future anxiety, pain, post-traumatic stress, humiliation, fear, financial losses and other damages.

## Count XIX - Defamation

**163.**     Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**164.**  The acts of the District of Columbia and the individual Defendants or their agents, as described in the preceding statement of facts, are defamatory and have damaged the reputations of Carla and Robert Doe and their family.  Specifically, the false charges of abuse and the removal of several of the children from their home without cause or legal basis has placed Robert and Carla Doe in a false light in the legal community and with the public at large.  As a result of the Defendants' actions the Plaintiffs suffered, continue to suffer, and will suffer in the future anxiety, pain, post-traumatic stress, humiliation, fear, and other damages.

## Count XX -Invasion of Privacy

**165.**     Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**166.**  The acts of the District of Columbia and the individual Defendants or their agents, as described in the preceding statement of facts, were an unlawful invasion of the privacy of the Plaintiffs.  Specifically, the Defendants took actions and conspired to act to

intrude into the Plaintiffs' home and personal lives in a manner not authorized by law.

As a result of the Defendants' actions the Plaintiffs suffered, continue to suffer, and will

suffer in the future anxiety, pain, post-traumatic stress, humiliation, fear, and other

damages.

## Count XXI - Negligent Hiring and/or Supervision

**167.**    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**168**.    The District of Columbia has been on notice for over a decade of the illegal and

incompetent actions taken by CFSA and its employees.  Despite this awareness, the

District has failed to institute and implement sufficient hiring and promotion policies,

supervisory structures and administrative policies that would eliminate or significantly

minimize the negligent or illegal acts of CFSA employees.   As a direct result of the

District's negligence, CFSA employees unsuited for the demanding roles of social

worker, supervisory social worker, administrator, and counsel were hired and/or

promoted within CFSA to these positions of authority.  These persons, as identified in

the preceding statement of facts, took actions against the Plaintiffs in violation of the U.S.

Constitution and Federal laws, and the policies, regulations, and laws of the District of

Columbia.  The District knew or should have known that these employees were either

unsuited for their positions or that close supervision and substantive training would be needed to insure that they performed appropriately.   As a result of the District's negligent hiring and/or supervision, the Plaintiffs suffered, continue to suffer, and will suffer in the future anxiety, pain, post-traumatic stress, humiliation, fear, financial loss, and other damages.

## COUNT XXII - VIOLATION OF THIS COURT'S ORDERS AND THE IMPLEMENTATION PLAN PROVIDED IN *LASHAWN*

**169.**     Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**170.**     The Defendants, as described in the preceding statement of facts, failed to properly respond to the post-adoption needs of the Doe Family.  This Court's decisions in  *LaShawn A.* requires that all services necessary to preserve families shall be available to adoptive families, including subsequent to the finalization of adoption.  *LaShawn A.*, Modified Final Order, Section VIII, G.2.

**171.**     The Plaintiffs require the following services: (a) appropriate and suitable residential or foster family placement for Plaintiffs Wayne and Sara Doe due to their severe emotional problems and need for treatment; (b) appropriate therapy for the other Plaintiffs, including family therapy; and (c) transportation assistance.  Other needs as may be identified in the future.

172.    Instead of providing the necessary services, the Defendants engaged in a campaign to retaliate against the Plaintiffs for seeking services.  Such conduct is a serious violation of this Court's Orders in *LaShawn* and the spirit and intent of the Implementation Plan.

173.    In addition, the Defendant District of Columbia failed to have a suitable plan in place for post-adoption needs such as those required for Sara and Wayne Doe.  This failure resulted in the initial inability of CFSA to insure the proper treatment of Sara and Wayne Doe, which resulted in the agency first pursuing an unsubstantiated charge of abuse/neglect against their parents and ultimately resulted in the initiation of juvenile charges against Sara and Wayne.   These ill-conceived actions demonstrate that CFSA has violated this Court's Order to provide appropriate post-adoption services and has no present capability to provide such services.

174.    Following meetings between Robert and Carla Doe and CFSA Director Brenda Donald Walker, efforts were initiated to provide services to the Doe Family.  However, it is unclear if CFSA's efforts will be sufficient to meet the Family's needs or will be sustained for a sufficient period of time.   Therefore, Court intervention is warranted.

## COUNT XXIII - PUNITIVE DAMAGES

### Individual Defendants

**175.**     Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

**176.**    The acts of the individual Defendants, as described in the preceding statement of facts, were outrageous, wanton, and reckless and were taken in willful disregard of the Plaintiffs rights and in disregard of their condition as an adoptive family with fragile adopted children.

### District of Columbia

**177.**  The actions of the District of Columbia government have resulted in the creation of a foster care and adoption system that has functioned negligently and well below standards set by Federal and District law since 1987.   The District government with the support of District taxpayers is directly responsible for perpetrating the policies that caused the Plaintiff's injuries.  In addition, the District and its policymakers have intentionally adopted the unconstitutional and/or illegal policies and practices concerning the assessment and placement of children for adoption and the removal of children from their homes.   These extraordinary circumstances require that punitive damages against the District government be awarded.

*Complaint - page 50*

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that the Court provide the following relief:

**(A)**    Enjoin the Defendants, and specifically the individual Defendants, from engaging in any further actions against the Plaintiffs in violation of their rights under federal laws, the U.S. Constitution, and the laws of the District of Columbia.

**(B)**    Declare that the actions taken by the Defendants were unlawful.

**(C)**    Award compensatory damages, damages for pain and suffering, and damages for emotional distress jointly and severally against the Defendants for the acts complained of in an amount not less than $5 million.

**(D)**    Award punitive damages against the Defendants for their wanton, willful, and malicious acts as follows:

        (1)    Against the District of Columbia in an amount of not less than $10 million;

        (2)    Against each of the individual Defendants in an amount of not less than $150,000.

**(E)**    Order Defendant District of Columbia to provide all post-adoption services requested herein consistent with the needs of the Plaintiffs and this Court's Orders in *LaShawn* and the Implementation Plan.

**(F)**    Award all attorneys' fees, expert witness fees, and costs of litigation;

**(G)**     Order that the names of Plaintiffs Robert and Carla Doe be removed from any abuse and neglect or other list/registry maintained by CFSA.

**(H)**     Order that the names of Plaintiffs Robert and Carla Doe be removed from the records of the D.C. Superior Court and/or any other District or Federal agency in connection with any allegation of abuse or neglect of their children, and that all records maintained by the D.C. Superior Court regarding the abuse and neglect proceeding initiated by the Defendants be expunged from the records of the Court;

**(I)**     Order that all children presently in the custody or control of CFSA be assessed for attachment disorder (including reactive attachment disorder) and sex abuse;

**(J)**     Order CFSA and its contractors to offer all pre-adoption and post-adoption families adequate services and support to meet the needs of the children and their families;

**(K)**     Order that all of the individual Defendants and their immediate subordinates (if any) undergo legal training concerning the rights of families and undergo sensitivity training regarding the damage caused to children and families by illegal or unnecessary removals;

**(L)**     Such other relief as the Court or Jury may find just and appropriate.

**JURY DEMAND**

The Plaintiffs request that all matters that can be tried by a jury be so tried.

Respectfully submitted,

_____
John M. Clifford, D.C. Bar No. 191866
Billie P. Garde, D.C. Bar No.  454465
Clifford & Garde
1707 L Street, NW, Suite 500
Washington, D.C. 20036
Tel. 202.289.8990

Dated: May 24, 2005