## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF COLUMBIA

**CARLA AND ROBERT DOE**, *et al.*,     }
                                        }
      Plaintiffs,     }
      v.             }
                                        }     Case No.  05-1060 (RBW)
                                        }
**THE DISTRICT OF COLUMBIA,** *et al.*     }
                                        }
      Defendants.     }
_____}

### PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Presently before the Court are the Defendants' Motion to Dismiss and/or for Summary Judgment ("Def. Mot."), Defendants' Statement of Material Facts Not in Genuine Dispute ("Def. Stmt. Facts"), and Defendants' Memorandum of Points and Authorities in Support of their Motion ("Def. Mem.").   In general, the Defendants raise twelve areas of argument that they assert as bases to dismiss or otherwise limit the Plaintiffs' claims.[1] As will be explained more fully below, there is no merit to the issues raised by the Defendants and this Court should deny the Defendants' motions.

## I.     Standard of Review - Rule 12(b)(6)

---

[1]  The individual defendants (Walker, Maxwell, Jackson, Stowe, Mallet , Phillippart and King) challenge the sufficiency of the service of process upon them and offer the supporting affidavit of Ms. Winston.   As this part of the motion arises under Rule 12(b)(5) –not 12(b)(6)—the presentation of matters outside the pleadings does not require the Court to treat the motion as one for summary judgment under Rule 56.  See, Fed. R. Civ. P., Rule 12.

Recently, this Court has had occasion to articulate the standards applied to a motion to dismiss pursuant to Fed.R.Civ.P., Rule 12(b)(6).

> A motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*; see also *Haynesworth v. Miller, 261 U.S. App. D.C. 66, 820 F.2d 1245, 1254 (D.C. Cir. 1987)*. All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  " *Conley, 355 U.S. at 47*. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002)* (quoting *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*).

> Under *Rule 12(b)(6)*, the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. *Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993)*; *Phillips v. Bureau of Prisons, 192 U.S. App. D.C. 357, 591 F.2d 966, 968 (D.C. Cir. 1979)*. The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)*; *Sparrow v. United Air Lines, Inc., 342 U.S. App. D.C. 268, 216 F.3d 1111, 1113 (D.C. Cir. 2000)*. Conclusory legal and factual allegations, however, need not be considered by the court. *Domen v. Nat'l Rehabilitation Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996)* (citing *Papasan v. Allain, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986)*).

*Winder v. Erste*, 2005 U.S. Dist. LEXIS 5190, *15 - *17 (D.D.C. March 31, 2005) (attached).  As is articulated more fully in the discussion that follows, when applying this standard to Plaintiffs' claims, this Court must deny the Defendants' motion under Rule 12(b)(6).

II.    **Summary Judgment Standard**

This Court has also recently described the standard for assessment of motions for

summary judgment.

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Fed. R. Civ. P. 56*. Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

In determining whether the moving party has met this burden, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)*. See *Washington Post Co. v. United States Dep't of Health and Human Servs., 275 U.S. App. D.C. 101, 865 F.2d 320, 325 (D.C. Cir. 1989)*. Once the moving party makes its initial showing, however, the nonmoving party's opposition must consist of more than mere unsupported allegations or denials and must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex Corp., 477 U.S. at 324.* See *McKinney v. Dole, 246 U.S. App. D.C. 376, 765 F.2d 1129, 1135 (D.C. Cir. 1985)*. Accordingly, at that point, the non-moving party is "required to provide evidence that would permit a reasonable [fact-finder] to find" in its favor. *Laningham v. United States Navy,* 259 U.S. App. D.C. 115, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

*Lerner v. District of Columbia*, 362 F. Supp.2d 149, 158 - 159 (D.D.C. 2005).   The only issue

the Defendants have pursued through summary judgment concerns the alleged improper service

of the individuals named in this suit.   As the discussion below and supporting affidavit of the

professional process server make clear, neither summary judgment, dismissal, nor an order

quashing service is warranted on this issue.

_____ARGUMENT

**III.    Plaintiffs' Properly Served the Individually-Named Defendants**

The individual Defendants assert that they were not served as required by the Fed. R. Civ.

P., Rule 4.  Rule 4 provides that service must be accomplished by delivering a copy of the

summons and complaint to the individual personally or by delivering the summons and

complaint to an authorized agent.  Def. Mem. at 6.

On May 31, 2005, Dwayne Boston, a professional process server employed by Capitol

Process Services, served a summons and complaint on each of individual Defendants employed

by CFSA through their authorized agent, Kia Winston.  Proof of service was filed with this

Court.  See, Return of Service, Docket entries 5 - 6, 8 - 12.  The individual Defendants served

were: Brenda Donald Walker, Sarah Maxwell, Sandra Jackson, Heather Stowe, Terri Thompson

Mallet, Rebekah Philippart, and Daphne King,

Contrary to the sworn declaration provided by Ms. Winston, Mr. Boston testifies that Ms.

Winston was informed that he was serving a summons and complaint for each of the individuals

employed by CFSA.  Boston Declaration ¶ 1 - 3.   Ms. Winston stated that she was authorized to

accept service and signed a routing slip for each of the individuals served.  Boston Declar. ¶ 1, 3,

Attachments - Service Work Sheets Signed by Kia Winston.[2]  At no time did Ms. Winston advise

Mr. Boston that he should serve the CFSA Defendants separately, nor does he recall her saying

that Defendant Mallett no longer worked at CFSA and that leaving documents with her would be

insufficient service.  Boston Declar. ¶ 6 - 8.  Finally, contrary to Ms. Winston's sworn statement

_____

[2]  The service work sheets are redacted in part to remove information that would identify
the Plaintiffs.

that she does "not have the authority to accept subpoenas for any particular social worker or employee," Mr. Boston provides true and accurate copies of affidavits that were provided as proof of service in other cases where Ms. Winston accepted service of subpoenas for various employees. Boston Declar. ¶ 5, Attachments - Copies of Service Affidavits Noting Service of Subpoenas Accepted by Kia Winston.

The Defendants assert that there are no material facts in dispute on the issue of service upon the CFSA Defendants and that they are entitled to summary judgment/dismissal. The Defendants motion fails because the facts relied upon by the Defendants are clearly in dispute. Boston Declar. ¶ 1 - 8, Attachments.

Moreover, the Court in evaluating the competing factual claims regarding service upon the CFSA Defendants should credit Mr. Boston's testimony over that of paralegal Kia Winston. Mr. Boston is a professionally trained process server who has worked as a professional process server for many years. Boston Declar. ¶ 8. In other cases, when Mr. Boston has been unable to certify that service was completed because he could not locate or personally serve a proper party he has declined to deliver the documents. Boston Declar. ¶ 8. He would never have left the summonses and complaints with Ms. Winston, if she refused to accept service or in any manner indicated that she was not authorized to accept service. Boston Declar. ¶ 1 - 3, 8.

Finally, what should be troubling to the Court is Ms. Winston's assertion that she does "not have the authority to accept subpoenas for any particular social worker or employee." Winston Declar. ¶ 4. As the records provided through Mr. Boston's testimony makes clear, Ms. Winston has accepted service of subpoenas for individual social workers or employees on numerous occasions. Boston Declar. ¶ 5, Attachments. Ms. Winston's statement is clearly false

and raises serious questions regarding the validity of the other statements she made in her sworn

declaration.

Plaintiffs urge the Court to deny the Defendants' motion seeking to dismiss[3] their claims

against CFSA Defendants: Brenda Donald Walker, Sarah Maxwell, Sandra Jackson, Heather

Stowe, Terri Thompson Mallet, Rebekah Philippart, and Daphne King.  If the Court is not

inclined to deny the Defendants' motion based upon the sworn declarations provided by the

parties, then Plaintiffs request that the Court allow them limited discovery and an evidentiary

hearing in order to fully address the alleged dispute regarding service and to locate the home

addresses of the CFSA Defendants.


**IV.    Claims for Prospective Injunctive Relief Against Mayor Williams in His Official
         Capacity are not Subject to Dismissal**

Defendant Mayor Anthony Williams argues that he should be dismissed from this suit

because a suit against him in his official capacity is the same as a suit against the District of

Columbia.  Def. Mem. at 5.  Mayor Williams' analysis is flawed because it fails to consider

Plaintiffs claims for prospective, injunctive relief.  Complaint at 51 - 52.

An official such as Mayor Williams, who serves as the chief executive overseeing the

actions and policy priorities of the Child & Family Services Agency (CFSA) and other agencies,

is responsible for ensuring that CFSA complies with statutory and regulatory obligations.  A state

actor like Mayor Williams may be sued in his official capacity for prospective, injunctive relief.

---

[3]Even if process had not been served properly, the appropriate remedy would be to quash
service, not to dismiss the complaint, as there is a reasonable prospect for effective service.  *See
Umbenhauer v. Woog*, 969 F.2d 25, 30-31 (3d Cir. 1992).

*Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 n. 10 (1989) (for purposes of injunctive relief state officials may continue to be sued in their official capacities even though they may be sued for damages only in their personal capacity).

Mayor Williams serves an important role in ensuring that CFSA and its officials alter current policies to make sure the Plaintiffs receive the services they are due and to protect the Plaintiffs and others similarly situated from being harmed by illegal/misguided actions and policies. Well established Supreme Court precedent requires that the Court deny Mayor Williams' request to be dismissed from this suit. See, *Ex Parte Young*, *Will*, *infra*.


**V.      Plaintiffs' have Stated Viable First Amendment Claims for Retaliation**

Defendants assert, without stating a basis in law, that the Plaintiffs' First Amendment claims must be dismissed because they failed to "show a nexus between their First Amendment speech and any action taken by defendants." Def. Mem. at 6 - 7. The Defendants failure to cite any law to support their position requires the Court to deny their motion to dismiss Plaintiffs' First Amendment counts.

Despite the severe shortcomings of the Defendants arguments, Plaintiffs will describe their First Amendment claims to the Court. In Counts IV and V, Plaintiffs assert that the Defendants retaliated against Plaintiffs for petitioning CFSA for assistance and for speaking out about the needs of their family and CFSA's obligations under District and Federal law, as well as

this Court's Orders in *LaShawn*.[4]  Complaint ¶ 133 - 136.  The bases for these claims is a series

of events that began to unfold shortly after Plaintiffs sought help from CFSA as an adoptive

family in crisis.  See, Complaint ¶ 64 - 126.  Before turning to the details of the retaliatory action

undertaken by the Defendants, Plaintiffs will briefly discuss the applicable law.

The Tenth Circuit has described the standards to be applied by persons claiming

retaliation for exercising First Amendment rights when the retaliation is executed by persons

other than the victim's employer.

> We have stated that "any form of official retaliation for exercising one's freedom
> of speech, including prosecution, threatened prosecution, bad faith investigation,
> and legal harassment, constitutes an infringement of that freedom." *Lackey v.
> County of Bernalillo*, 1999 U.S. App. LEXIS 75, No. 97-2265, 1999 WL 2461, at
> **3 (10th Cir. Jan. 5, 1999). We have required proof of the following elements:
> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that
> the defendant's actions caused the plaintiff "to suffer an injury that would chill a
> person of ordinary firmness from continuing to engage in that activity"; and (3)
> that the "defendant's adverse action was substantially motivated as a response to
> the plaintiff's exercise of constitutionally protected conduct." *Id*. That approach
> has been followed by other circuits. See, *e.g*, *Mendocino Environmental Center v.
> Mendocino County*, 192 F.3d 1283, 1300-01 (9th Cir. 1999);  *Bloch v. Ribar*, 156
> F.3d 673, 678 (6th Cir. 1998).

*Worrell v. Henry*, 219 F.3d 1197, 1212 - 1213 (10th Cir. 2000).  Other Circuits have described the

elements of a non-employment First Amendment claim similarly.  See, *e.g.*, *Izen v. Catalina*, 382

F.3d 566, 571 (5th Cir. 2004).

Regarding the first element of a First Amendment retaliation claim, Plaintiffs have

---

[4] *LaShawn A. v. Williams*, Case No. 89-1754 (TFH).  In June 1989, a class action lawsuit
was filed against the District of Columbia because the District had failed to provide legally
sufficient care and services for children and families involved in the foster care system.  See, *e.g.*,
*LaShawn A. v. Dixon*, 762 F. Supp. 959, 982 - 983 (D.D.C. 1991).  This Court has now been
involved in the oversight of CFSA for more than fourteen (14) years.

alleged in their Complaint that they engaged in constitutionally protected activities.  For example, Plaintiffs Carla and Robert Doe (i) petitioned CFSA for assistance, (ii) raised concerns about the agency's evaluation and care of Wayne and Sara, (iii) met with agency officials (including the named defendants) demanding that their family be given adequate services as required by law and this Court's Orders in *LaShawn A.*, (iv) objected to offers of inadequate services or assistance, and (v) objected to the interview process at the so-called Children's Advocacy Center (aka Safe Shores).  Complaint ¶ 65 - 82.

The second element of a First Amendment retaliation claim requires that the Plaintiffs assert that Defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.  Immediately following Plaintiffs constitutionally protected activities, they were subjected to, *inter alia*, retaliation and harassment culminating in the unlawful removal of their children from their home, false charges that they had sexually abused their children, and the initiation of juvenile charges against Wayne and Sara. Complaint ¶ 83 - 116.  The impact of these gross violations of the Plaintiffs' rights had a devastating effect on all of the Plaintiffs, but especially the fragile children who were struggling with issues of abuse and trauma.  Complaint ¶ 117 - 126.  There can be little doubt that the actions of the government and individuals would "chill a person of ordinary firmness" to the bone.  All the Plaintiffs have suffered severe emotional distress, anxiety, post-traumatic stress and related problems as a direct and proximate result of the Defendants' actions.

The third and final element of Plaintiffs' First Amendment retaliation claim requires that the Plaintiffs present evidence indicating that the Defendants' adverse actions were substantially motivated as a response to the Plaintiffs' exercise of constitutionally protected conduct.

Plaintiffs have asserted that the Defendants were concerned about Plaintiffs Carla and Robert

Doe blaming CFSA for the untreated illnesses suffered by Wayne and Sara which caused them to

abuse Ann and Oliver.  Complaint ¶ 73.  Plaintiffs challenged the inadequate services offered by

the CFSA Defendants.  Complaint ¶ 75, 79.

      In response to the Plaintiffs constitutionally protected actions, the Defendants took

prompt action to attack the Plaintiffs.  For example, although a CFSA investigation determined

that Plaintiffs Carla and Robert Doe had <u>not</u> failed to properly supervise or protect their children

(Complaint ¶ 78), the Defendants nonetheless insisted on taking their children without a basis in

law or fact.  Complaint ¶ 83 - 114.

      When the Defendants failed to establish or even sufficiently assert that Plaintiffs had

abused or neglected their children (Complaint ¶ 104 - 107), they then proceeded to prosecute

Wayne and Sara.  Complaint ¶ 115 - 116.  The proximity in time of these events to the requests

Plaintiffs were making for adequate services and support and the questions they were raising

about the adequacy of the assessment of Wayne and Sara prior to their adoption creates a strong

inference of retaliatory motive.  Moreover, the false allegations of sexual abuse and the removal

of children without bases in fact or law are strong indicators of animus and improper motive.

      In sum, the Plaintiffs clearly state sufficient facts to establish claims of retaliation under

the First Amendment.  The Defendants' motion to dismiss this issue should be denied.

**VI.     Plaintiffs Have Stated Viable Fourth Amendment Claims**
**      Against All Named Defendants**

      Next, the Defendants argue, with little legal support, that Plaintiffs have not stated viable

Fourth Amendment claims.  Def. Mem. at 7 - 8.  The Defendants seem to be arguing that

Plaintiffs have not stated sufficient facts to establish Fourth Amendment claims.  Def. Mem. at 7.

Further, Defendants argue that the individual defendants are immune based upon a defense of

qualified immunity because the "seizure [of the children] was 'reasonable' under the Fourth

Amendment."  Def. Mem. at 8.  Defendants also throw in that Plaintiffs have "failed to plead that

the District's customs, policies, or practices were the moving force behind the alleged

constitutional violations."   Def. Mem. at 9.  Plaintiffs will address each of the issues raised by

the Defendants in turn.

     The facts are discussed in detail in the Plaintiffs' Complaint. Complaint ¶ 84 - 113.  In

summary, the facts painfully articulated in the Complaint describe how the CFSA Defendants

orchestrated the illegal removal of Plaintiffs Carla and Robert Doe's children from their home.

*Id*.  The facts described reveal that the CFSA Defendants knew, based upon the investigation of

CFSA Social Worker Delores Williams,  that there was no danger posed to the children and that

Carla and Robert Doe had taken appropriate precautions once the abusive conduct of Wayne and

Sara was discovered.  Complaint ¶ 78.  Further, Defendant Mallett, then General Counsel for

CFSA, specifically threatened Carla and Robert Doe with police arrest if they did not cooperate

in the taking of their children and insisted that the children would be placed in foster care.

Complaint ¶ 90.   The Defendants also refused to seek approval from a court prior to taking the

child Plaintiffs from their home.  Complaint ¶ 89, 91.

     When Defendants Philippart and King arrived at the Plaintiffs' home to take the children

they could not explain what imminent danger was posed to the children requiring their removal.

Complaint ¶ 93 - 96.  Nor could Defendants Philippart and King articulate the legal basis or

authority for the taking of the children.  Complaint ¶ 95.  In fact, the legal notice provided to

Robert and Carla Doe at the time their children were taken was incomplete and unsigned by any

CFSA official.  Complaint ¶ 93.

Under District of Columbia law, in order for CFSA officials to take children into custody

without a court order the agency must have "reasonable grounds to believe that the child is in

immediate danger from his or her surroundings <u>and</u> that the removal of the child from his or her

surroundings is necessary."  D.C. Code § 16-2309(a)(3) (emphasis added).[5]  CFSA investigative

Social Worker Delores Williams determined <u>prior</u> to the Defendants' illegal taking of Ann,

Oliver, and Sara that there was no "immediate danger."  Complaint ¶ 78.  Moreover, none of the

Defendants provided the Plaintiffs with any factual or legal bases for the illegal taking of the

children either before or after the taking.  The Defendants' had no information to justify the

taking resulting in their decision to "no paper" the case initiated against Carla and Robert Doe.

Complaint ¶ 101 - 107.[6]

Cases that have addressed similar circumstances have ruled that the agency or individuals

involved may be liable for violating the child's or parent's Fourth Amendment rights.
The removal of a child from his family home by social workers is a "seizure"
implicating the Fourth Amendment. See, *e.g.*, *Brokaw v. Mercer County*, 235 F.3d

---

[5]  Moreover, CFSA policy regarding removals was significantly violated when the
Defendants took action against the Plaintiffs.  CFSA Policy Procedure U: Removal and
Placement presents CFSA's view of the proper steps in removing children from their home.  For
example, the policy requires CFSA to consider providing a family with services or other supports
that will "ameliorate" the alleged abuse or neglect.  Procedure U ¶ 2.  The investigations worker
must consult with the Supervisor and Program Manager in conducting a removal.  Procedure U ¶
3.  An affidavit of reasonable efforts is supposed to be prepared, identifying what efforts were
undertaken to attempt to avoid removal.  Procedure U ¶ 3(i), 10.  None of these requirements
were followed by the Defendants.

[6]  In the face of these facts, Defendants Motion is frivolous and may be sanctionable.  It
does not appear that Defendants' counsel reviewed CFSA's records or made a reasonable inquiry
of the facts and law before signing and presenting the Motion.  Fed. R. Civ. P., Rule 11(b).

1000, 1010 (7th Cir. 2000) (determining that a child who was carried out of his home, placed in a car, and driven away was not free to leave and thus was "seized" within the meaning of the Fourth Amendment); *Wooley v. City of Baton Rouge*, 211 F.3d 913, 925 (5th Cir. 2000) (the Fourth Amendment extends beyond criminal "arrests" to include civil "seizures"); *Tenenbaum v. Williams*, 193 F.3d 581, 601-606 (2d Cir. 1999) (analyzing removal of a child by the state during an abuse investigation as a seizure under the Fourth Amendment); *J.B. v. Washington County*, 127 F.3d 919, 928-31 (10th Cir. 1997) (county officials' temporary removal of a child is a seizure implicating the Fourth Amendment); *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000) (removal of children should be assessed under the Fourth Amendment).

*O'Donnell v. Brown*, 335 F. Supp. 2d 787, 806 (D. Mich. 2004).   In the instant case, there is no evidence suggesting any legitimate bases for taking Plaintiffs Oliver, Ann, and Sara, and causing trauma, grief and emotional distress for each of them as well as the other Plaintiffs.  Under such egregious circumstances, the actions of the CFSA Defendants cannot be deemed "reasonable" for qualified immunity or any other purposes.

Finally, the facts describing Plaintiffs' Fourth Amendment claims (Count VI) indicate "customs, policies, and practices" of the District of Columbia that led to the illegal actions taken against the Plaintiffs.   The Plaintiffs have stated in their Complaint that "the District and its policymakers have intentionally adopted the unconstitutional and/or illegal policies and practices concerning the assessment and placement of children for adoption and the removal of children from their homes."  Complaint ¶ 177.  The Plaintiffs have also alleged in each count concerning a violation of constitutional rights that the Defendants acted with "deliberate indifference" or deliberately violated their rights.  Complaint ¶ 128, 130, 132, 134, 136, 138, 140, 142, 144, 146.

Plaintiffs' Complaint more than adequately meets the requirements for pleading claims pursuant to 42 U.S.C. § 1983.

> There are a number of ways in which a "policy" can be set by a municipality to
> cause it to be liable under § 1983: the explicit setting of a policy by the
> government that violates the Constitution, *see Monell, 436 U.S. at 694-95*; the
> action of a policy maker within the government, *City of St. Louis v. Praprotnik,*
> 485 U.S. 112, 123-30, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988); the adoption
> through a knowing failure to act by a policy maker of actions by his subordinates
> that are so consistent that they have become "custom," *id. at 130*; or the failure of
> the government to respond to a need (for example, training of employees) in such
> a manner as to show "deliberate indifference" to the risk that not addressing the
> need will result in constitutional violations, *Harris,* 489 U.S. at 390; *Daskalea v.*
> *Dist. of Columbia,* 343 U.S. App. D.C. 261, 227 F.3d 433, 441 (D.C. Cir. 2000).
> Deliberate indifference is determined by analyzing whether the municipality knew
> or should have known of the risk of constitutional violations, an objective
> standard. *Farmer,* 511 U.S. at 841.

*Baker v. District of Columbia*, 326 F.3d 1302, 1306 - 1307 (D.D.C. 2003).  In the instant case,

the Defendants have taken actions or refused to act in a manner that reflects each of the ways in

which a policy can be set by a municipality for the purposes of § 1983 liability.

Plaintiffs in a § 1983 action are not required to meet a heightened pleading standard.

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993)

(plaintiffs alleging municipal liability under 42 U.S.C. § 1983 need not satisfy any heightened

pleading standard).  In light of the liberal pleading standard, this Circuit has stated: " [a]

complaint, in other words, need not allege all that a plaintiff must eventually prove."  *Atchinson*

*v. District of Columbia*, 73 F.3d 418, 421 - 422 (D.C. Cir. 1996).    Plaintiffs Complaint can be

fairly read to take issue with the District's policies, practices, and customs concerning: (i) the

training and supervision of employees, (ii) removal of children from their home, and (iii)

retaliation for speaking out about services and seeking assistance.

Defendants arguments to dismiss Plaintiffs' Fourth Amendment claims are simply

without  merit.  The Court should deny Defendants' motion.

## VII.   Plaintiffs' Fifth Amendment Claims Must Be Sustained

### A.      Plaintiffs' Substantive Due Process Rights Were Violated.

In Count I, Plaintiffs state, in part:

> Defendant District of Columbia acted with deliberate indifference toward
> the constitutional rights of all of the Plaintiffs in that it failed to: (a)
> properly train its employees; (b) properly supervise its employees; and  (c)
> failed to protect Plaintiffs Robert and Carla Doe and their children from
> harm.  Such deliberate indifference amounts to violations of the Plaintiffs
> rights under the Fifth Amendment of the U.S. Constitution, proximately
> causing injury to the Plaintiffs.  Therefore, Defendant District is liable to
> the Plaintiffs for violations of their civil rights under 42 U.S.C. § 1983.

Complaint ¶ 128.  In Count III, Plaintiffs state, in part:

> Defendant District of Columbia and the individual Defendants acted with
> deliberate indifference toward the constitutional rights of all of the
> Plaintiffs and purposely violated the law when they unlawfully
> threatened to remove and then removed Plaintiffs Ann, Oliver and Sara
> Doe from their homes.  Such deliberate indifference and intentional
> violations of law shocks the conscience and amounts to gross violations of
> the Plaintiffs' rights to Substantive and Procedural Due Process under the
> Fifth Amendment of the U.S. Constitution, proximately causing injury to
> the Plaintiffs.

Complaint ¶ 132.  Defendants' Motion argues that Plaintiffs claims are "conclusory" and that

Plaintiffs fail to identify "a liberty interest that was protected at the time the District trained

and/or supervised its employees."  Def. Mem. at 10.   Defendants do not challenge Plaintiffs'

allegations in Count III that the Defendants' "unlawfully threatened to remove and then

removed Plaintiffs Ann, Oliver and Sara Doe from their homes," and that such actions

shock the conscience by blatantly violating Plaintiffs' Substantive Due Process rights.

Regarding the Defendants' concerns about the adequacy of Plaintiffs' claims regarding training and supervision (Count I), Plaintiffs stated throughout the Complaint instances where it is apparent that the persons involved were inadequately trained and/or supervised. Plaintiffs have already discussed how a CFSA investigative social worker had reviewed their circumstances and determined that there was no "imminent danger" to the children because Carla and Robert Doe had taken the necessary precautions. Complaint ¶ 78. No services were offered to the Does in order to ameliorate an alleged danger to the children. Complaint ¶ 84. Despite the lack of any indication of danger to the children, and a report by the investigating social worker to the contrary, the Defendants' pursued removal of the minor Plaintiffs without court involvement or court order. Complaint ¶ 89 - 112. Then CFSA General Counsel Mallett threatened Robert and Carla Doe with police involvement or arrest. Complaint ¶ 90, 92. Plaintiffs Ann, Oliver, and Sara were removed from there homes based upon an unsigned piece of paper with no indication the Program Manager or other high level official had approved the action. Complaint ¶ 93. The social workers involved in the taking could not or would not state the basis for claiming that the children were in "imminent danger" and did not know the legal basis for the removal action. Complaint ¶ 94 - 96. Once removed form their home, the children were taken for invasive examinations at Children's Hospital without legal authority or parental permission. Complaint ¶ 100. The complaints filed in Superior Court against Robert and Carla Doe <u>falsely and baselessly</u> claimed that they had sexually abused their children. Complaint ¶ 104. An unnecessary juvenile action was initiated against Wayne and Sara that further traumatized them and their parents. Complaint ¶ 115 - 116, 121 - 126. Sara Doe was taken by a CFSA social

worker for an unauthorized and invasive examination at Children's Hospital wherein she was

forced to wait without any dinner until the early morning hours of the next day. Sara was not

returned to her foster home until approximately 4:20 a.m. Complaint ¶ 117 - 120.

Surely the Defendants are not arguing that the actions just described are the reasonable

and appropriate actions of a properly trained staff? In the face of the allegations raised in

Plaintiffs' Complaint, there is no doubt that there are serious training and supervision issues.[7]

The Defendants' request to dismiss on these issues should be denied.

The Court should also disregard Defendants' bald assertion that Plaintiffs have failed to

identify a liberty interest that was at stake. As the above-referenced paragraphs of the Complaint

make clear, Plaintiffs liberty interests in being free from unlawful seizure, familial separation,

and unlawful, invasive medical examinations were violated. The Court should deny Defendants'

request to dismiss on these unsubstantiated grounds.


**B.      Plaintiffs' Procedural Due Process Rights Were  Violated.**

Ironically, Defendants brazenly assert that "[p]laintiffs were afforded procedural due

process." Def. Mem. at 11. This assertion is belied by the facts. No pre-deprivation process was

provided either informally or through the courts. To this day, Plaintiffs have not been informed

what "imminent danger" their children allegedly faced at the time of their illegal removal from

their home. Complaint ¶ 89, 93 - 95, 101 - 103.

One court has described the procedural Due Process issue in a child removal case as

---

[7] Training on a variety of issues has been a serious problem historically for CFSA. See,
*e.g.*, *LaShawn A. v. Kelly*, 887 F.Supp. 297 (D.D.C. 1995) (placing CFSA in full receivership).

follows:

> Procedural due process applies only to the deprivation of constitutionally protected liberty or property interests. *Board of Regents v. Roth,* 408 U.S. 564, 569, 33 L. Ed. 2d 548, 92 S. Ct. 2701, 2705 (1972). To state a cognizable *§ 1983* claim based on the deprivation of procedural due process, the government's conduct in depriving a person of a protected liberty interest must go beyond mere negligence and must instead be grossly negligent, deliberately indifferent, or intentional. *Howard v. Grinage,* 82 F.3d 1343, 1350 (6th Cir. 1996) (citing *Howard v. Grinage (Howard I),* 6 F.3d 410, 415 (6th Cir. 1993) and *Franklin v. Aycock,* 795 F.2d 1253, 1262 (6th Cir. 1986)). Here, there is no question that removing the children was intentional. Once the deprivation of a constitutionally protected liberty or property interest has been demonstrated, a court must determine whether a plaintiff was afforded adequate due process protection. *Morrissey v. Brewer,* 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593, 2600 (1972) ("Once it is determined that due process applies, the question remains what process is due."). Plaintiffs argue that the entry into the home and removal of the children deprived them of their protected liberty interest in family integrity, and that these events occurred without required pre-deprivation process.

*O'Donnell v. Brown*, 335 F. Supp. 2d 787, 809 (S.D.Mich. 2004).  In fact scenarios, as here,

where there are no exigent circumstances and no imminent danger,

> due process requires a written order unless exigent circumstances are present. See *Brokaw, 235 F.3d* at 1020 (7th Cir. 2000) ("Minimally, [due process] also means that governmental officials will not remove a child from his home without an investigation and pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances."). See also *Hollingsworth v. Hill,* 110 F.3d 733, 739 (10th Cir. 1997) ("Removal of children from the custody of their parents requires predeprivation notice and a hearing except for extraordinary situations where some valid governmental interest is at stake that justified postponing the hearing until after the event.") (internal quotation marks and citation omitted); *Malik,* 191 F.3d at 1315 (a parent has a liberty interest in familial association and privacy that, absent extraordinary circumstances, cannot be violated without adequate pre-deprivation procedures). Cf. *Lossman v. Pekarske,* 707 F.2d 288, 291 (7th Cir. 1983) ("When a child's safety is threatened, that is justification enough for action first and a hearing afterward."); *Jordan by Jordan v. Jackson,* 15 F.3d 333, 346 (4th Cir. 1994)  ("Only where a child's life is in imminent danger or where there is immediate danger of severe or irremediable injury to the child's health (and prior judicial authorization is not immediately obtainable) may an official summarily assume custody of a child from his parents.").

*O'Donnell*, 335 F. Supp. 2d at 812 - 813.  There can be no legitimate dispute that the Plaintiffs

received no written order, no pre-deprivation hearing, and no information indicating the factual

or legal bases for the removal of Ann, Oliver, and Sara.   Moreover, as previously noted, CFSA's

pre-removal investigation found no bases to claim the children were in danger.  Complaint ¶ 78.

Consequently, this Court should deny the Defendants' Motion to dismiss Plaintiffs' Due Process

claims.


## VIII.  Plaintiffs' Ninth Amendment Claims are Actionable


The Defendants next assert, citing District Court cases from New York, that the Ninth

Amendment does not provide Plaintiffs protection through any specific right.  Def. Mem. at 11 -

12.  Plaintiffs read the Ninth Amendment much like the Supreme Court did when it analyzed the

Amendment in a series of famous cases defining some of the constitutional mechanisms that

protect one's personal privacy.

> The foregoing cases suggest that specific guarantees in the Bill of Rights have
> penumbras, formed by emanations from those guarantees that help give them life
> and substance.  See *Poe v. Ullman,* 367 U.S. 497, 516-522 (dissenting opinion).
> Various guarantees create zones of privacy. The right of association contained in
> the penumbra of the First Amendment is one, as we have seen.  The Third
> Amendment in its prohibition against the quartering of soldiers "in any house" in
> time of peace without the consent of the owner is another facet of that privacy.
> The Fourth Amendment explicitly affirms the "right of the people to be secure in
> their persons, houses, papers, and effects, against unreasonable searches and
> seizures." The Fifth Amendment in its Self-Incrimination Clause enables the
> citizen to create a zone of privacy which government may not force him to
> surrender to his detriment.  The Ninth Amendment provides: "The enumeration in
> the Constitution, of certain rights, shall not be construed to deny or disparage
> others retained by the people."

*Griswold v. Connecticut*, 381 U.S. 479, 484 (1965).   The majority's reference to the Ninth

Amendment in *Griswold* was not accidental or superfluous.  The Ninth Amendment ensures that

protections not specifically enumerated in the Constitution are available to the people.  Justice

Goldberg explained:

> I do agree that the concept of liberty protects those personal rights that are
> fundamental, and is not confined to the specific terms of the Bill of Rights.  My
> conclusion that the concept of liberty is not so restricted and that it embraces the
> right of marital privacy though that right is not mentioned explicitly in the
> Constitution n1 is supported both by numerous decisions of this Court, referred to
> in the Court's opinion, and by the language and history of the Ninth Amendment.
> In reaching the conclusion that the right of marital privacy is protected, as being
> within the protected penumbra of specific guarantees of the Bill of Rights, the
> Court refers to the Ninth Amendment, *ante*, at 484.  I add these words to
> emphasize the relevance of that Amendment to the Court's holding. [footnote
> omitted]

> \*          \*          \*          \*          \*

> The language and history of the Ninth Amendment reveal that the Framers of the
> Constitution believed that there are additional fundamental rights, protected from
> governmental infringement, which exist alongside those fundamental rights
> specifically mentioned in the first eight constitutional amendments. [footnote
> omitted]

> The Ninth Amendment reads, "The enumeration in the Constitution, of certain
> rights, shall not be construed to deny or disparage others retained by the people."
> The Amendment is almost entirely the work of James Madison.  It was introduced
> in Congress by him and passed the House and Senate with little or no debate and
> virtually no change in language.  It was proffered to quiet expressed fears that a
> bill of specifically enumerated rights n3 could not be sufficiently broad to cover
> all essential  rights and that the specific mention of certain rights would be
> interpreted as a denial that others were protected. n4 [footnotes omitted]

> \*          \*          \*          \*          \*

> While this Court has had little occasion to interpret the Ninth Amendment, n6 "it
> cannot be presumed that any clause in the constitution is intended to be without
> effect." *Marbury v. Madison,* 1 Cranch 137, 174.  In interpreting the Constitution,
> "real effect should be given to all the words it uses." *Myers v. United States,* 272

U.S. 52, 151. The Ninth Amendment to the Constitution may be regarded by some as a recent discovery and may be forgotten by others, but since 1791 it has been a basic part of the Constitution which we are sworn to uphold.  To hold that a right so basic and fundamental and so deep-rooted in our society as the right of privacy in marriage may be infringed because that right is not guaranteed in so many words by the first eight amendments to the Constitution is to ignore the Ninth Amendment and to give it no effect whatsoever.  Moreover, a judicial construction that this fundamental right is not protected by the Constitution because  it is not mentioned in explicit terms by one of the first eight amendments or elsewhere in the Constitution would violate the Ninth Amendment, which specifically states that "the enumeration in the Constitution, of certain rights, shall not be *construed* to deny or disparage others retained by the people." (Emphasis added.)

*        *        *        *        *

I agree with MR. JUSTICE HARLAN'S statement in his dissenting opinion in *Poe v. Ullman,* 367 U.S. 497, 551-552: "Certainly the safeguarding of the home does not follow merely from the sanctity of property rights.  The home derives its pre-eminence as the seat of family life.  And the integrity of that life is something so fundamental that it has been found to draw to its protection the principles of more than one explicitly granted Constitutional right. . . .  Of this whole 'private realm of family life' it is difficult to imagine what is more private or more intimate than a husband and wife's marital relations."

The entire fabric of the Constitution and the purposes that clearly underlie its specific guarantees demonstrate that the rights to marital privacy and to marry and raise a family are of similar order and magnitude as the fundamental rights specifically protected.

Although the Constitution does not speak in so many words of the right of privacy in marriage, I cannot believe that it offers these fundamental rights no protection.  The fact that no particular provision of the Constitution explicitly forbids the State from disrupting the traditional relation of the family -- a relation as old and as fundamental as our entire civilization -- surely does not show that the Government was meant to have the power to do so.  Rather, as the Ninth Amendment expressly recognizes, there are fundamental personal rights such  as this one, which are protected from abridgment by the Government though not specifically mentioned in the Constitution.

*        *        *        *        *

In sum, I believe that the right of privacy in the marital relation is fundamental

Page 21 of  32

> and basic -- a personal right "retained by the people" within the meaning of the
> Ninth Amendment. Connecticut cannot constitutionally abridge this fundamental
> right, which is protected by the Fourteenth Amendment from infringement by the
> States. I agree with the Court that petitioners' convictions must therefore be
> reversed.

*Griswold*, 381 U.S. at 486 - 499 (Goldberg, J., concurring).

Plaintiffs are not only asserting a general liberty interest and right to privacy that was

violated by the Defendants' unlawful actions. Plaintiffs assert rights to be free from familial

separation, the rights of parents to protect their children, the rights of siblings to remain together,

and the rights of fragile children to be free from unlawful intrusion which causes harm.

Plaintiffs' Complaint can be fairly read to raise significant privacy issues that are protected by the

Ninth Amendment's guarantee. Complaint ¶ 101, 103 - 105, 120, 126, 142, 146. Therefore, this

Court should not dismiss the Plaintiffs' claims of protection pursuant to the Ninth Amendment.

## IX.    Plaintiffs' Fourteenth Amendment Claims

Plaintiffs did not intend to raise claims against the District of Columbia pursuant to the

Fourteenth Amendment. The reference in Plaintiffs' Complaint was inadvertent. Plaintiffs agree

with the Defendants that their constitutional claims against the District of Columbia and its

officials must be lodged through the Fifth Amendment. Def. Mem. at 12.

## X.    The Individually Named Defendants Are Not Entitled to Qualified Immunity

Defendants argue that individually named Defendants: Walker, Mallett, Stowe, Maxwell,

Jackson, Philippart, and King are entitled to qualified immunity from "plaintiffs' constitutional

claims filed under 42 U.S.C. § 1983." Def. Mem. at 12 - 13. For purposes of a Rule 12 (b)(6)

motion, the Defendants are arguing that no set of facts pled by the Plaintiffs can lead to the

conclusion that the CFSA Defendants are not entitled to escape liability through a qualified immunity determination. In support of their argument Defendants glibly state that "[r]emoval of the children from the location in which they suffered the abuse was reasonable, and these defendants cannot be held liable on plaintiffs constitutional claims." Def. Mem. at 13. The Defendants arguments ignore the law and facts.

In summary, "[q]ualified immunity generally shields public officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)." *Moore v. Hartman*, 388 F.3d 871, 872 (D.C. Cir. 2004). More specifically, the Court in *Moore* stated:

> Underlying this doctrine is the basic principle of fair notice: officials may be held liable if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton,* 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987); otherwise, the unfairness of holding officials responsible on grounds they could not have anticipated trumps the individual's interest in vindicating transgressed rights. *See id. at 641*; *Crawford-El v. Britton,* 523 U.S. 574, 590-91, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998). To ensure that shielding public officials from unclear law does not freeze the law in place, however, courts facing qualified immunity claims ordinarily engage in a two-step inquiry, considering first what the law is, and only then whether that law was clearly established. *See Wilson v. Layne,* 526 U.S. 603, 609, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999). Were the procedure otherwise, constitutional avoidance might lead courts to rest on findings of uncertainty without first clarifying the law for future cases--a result contrary to the interest of both government officials and individuals claiming that such officials violated their constitutional rights. *See id.*; *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n.5, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998).
>
> Because the qualified immunity inquiry focuses on whether the officials could have known "what [they were] doing" was unlawful, *Anderson,* 483 U.S. at 640, defining the right "at the appropriate level of specificity" is critical. *Wilson,* 526 U.S. at 615; *see also Butera v. District of Columbia,* 344 U.S. App. D.C. 265, 235 F.3d 637, 646 (D.C. Cir. 2001). While the right need not have arisen in identical

or even "fundamentally" or "materially similar" circumstances, *see Hope v. Pelzer,* 536 U.S. 730, 739, 741, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002), the right can be considered clearly established only if the unlawfulness was "apparent" in light of pre-existing law, *see Anderson,* 483 U.S. at 640. The "salient question," then, is "whether the state of the law [at the relevant time] gave [the officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope,* 536 U.S. at 741.

*Moore*, 388 F.3d at 876 - 877.   As discussed in *Moore*, the two-part analysis for a qualified immunity defense involves (1) establishing what the law is, and (2) whether the law was clearly established.  That is, whether the unlawfulness of the CFSA Defendants acts was apparent.  The Defendants cited no case law concerning the standard nor did they discuss the detailed facts alleged in the Complaint, except to make the self-serving statement that removal of the children was reasonable.  Def. Mem. at 13.  The Plaintiffs will address each of the elements of the qualified immunity defense below.

The Plaintiffs have asserted facts establishing, at least for purposes of a motion to dismiss, that the CFSA Defendants are not entitled to a qualified immunity defense.  Complaint ¶ 64 - 126.   To begin, it is clear that the CFSA Defendants acted unlawfully.  As noted previously, absent a Court order, CFSA cannot remove children from their homes unless there are "reasonable grounds to believe that the child is in immediate danger from his or her surroundings and that the removal of the child from his or her surroundings is necessary."  D.C. Code § 16-2309(a)(3) (emphasis added).   CFSA officials can also remove a child without first obtaining a Court order if there are "reasonable grounds to believe that the child is suffering from illness or injury or otherwise is endangered and that the child's removal from his or her surroundings is necessary."  D.C. Code § 16-2309(a)(4) (emphasis added).

In the instant case, the CFSA Defendants knew before they took action to remove Ann, Oliver, and Sara from their home that there was no immediate danger nor were the children otherwise endangered.  Complaint ¶ 78.   The unlawful and retaliatory nature of the removal is also apparent from the other actions taken by the Defendants.  Defendant Mallett refused to obtain a Court order or allow the Plaintiffs to come to Court and have the issues addressed by a Judge before any action was taken by the Defendants.  Complaint ¶ 90 - 91.  Defendant Mallett also threatened Robert and Carla Doe with police involvement (*e.g.*, arrest) if they did not relinquish their children.  Complaint ¶ 90, 92.

The social workers (Defendants Phillipart, King, and others) who came to the Plaintiffs' home to remove the children provided no factual or legal bases for the removal.  Complaint ¶ 93 - 95.  Robert Doe advised that the removal was improper, but the social workers refused to forego the removal.  Complaint ¶ 96.  Because significant resistance would have further traumatized the children, on the advice of the children's therapist, Carla and Robert Doe prepared their children and allowed them to be removed from their home.  Complaint ¶ 92.

Once the social workers had removed them, the children were taken to Children's Hospital for unlawful and invasive examinations.  Complaint ¶ 100.   The actions of the Defendants in removing Ann. Oliver, and Sara were plainly illegal and intended to retaliate against and intimidate Carla and Robert Doe.  Complaint ¶ 101 - 102.

Following the removal, the Defendants were then forced to justify their action in Superior Court.  They falsely claimed that Robert and Carla Doe had sexually abused their children. Complaint ¶ 104.  However, Defendants failed to allege in their complaint to the Superior Court that the children were in any type of imminent danger as alleged in the unsigned Notice served

upon Carla and Robert Doe at the time of the removal.  Complaint ¶ 93, 105.  As the Defendants'

complaint against Robert and Carla Doe was utterly without merit (Complaint ¶ 78), the District

decided to "no paper" the case and it was dismissed.  Complaint ¶ 107.

Frustrated with their failure make an abuse or neglect complaint stick, the Defendants

then decided to prosecute Wayne and Sara.  Complaint ¶ 115 - 116, 121 - 126.  This

discriminatory and retaliatory action further damaged the already severely traumatized Plaintiffs.

Complaint ¶ 126.

The illegal and reckless nature of the Defendants actions is abundantly clear.  As the facts

demonstrate, the CFSA Defendants violated the Plaintiffs First, Fourth, Fifth, and Ninth

Amendment rights.  Complaint ¶ 127 - 146.  There can be little doubt that the CFSA Defendants

knew or should have known the standards required by District law in order to remove children

and that violation of those standards would result in a violation of one or more constitutional

rights:  First Amendment (retaliation); Fourth Amendment (illegal seizure); Fifth Amendment

(Due Process); and Ninth Amendment (personal and familial privacy).[8]

Not only do the facts alleged by the Plaintiffs establish that, at least for the purposes of

the Defendants' Motion, the Defendants violated clearly established law, but the facts also

indicate that the Defendants acted with malice toward the Plaintiffs.  Most troubling, however, is

the fact that Defendants' malice was shamefully directed toward and damaged already hurt and

fragile children.  Considering the facts and law discussed herein, this Court should deny the

CFSA Defendants request to escape liability through a qualified immunity defense.

---

[8]  Plaintiffs have previously discussed herein the applicable law and clear violation of
their constitutional rights.  See, *infra*, Sections V - VIII.

**XI.    Plaintiffs Have Set Forth Viable Constitutional Claims Against
the District of Columbia**

Defendants argue that Plaintiffs have failed to allege sufficient facts to impose municipal

liability upon the District of Columbia.  Def. Mem. at 13 - 14.  Plaintiffs have largely addressed

this issue in response to Defendants' earlier arguments in support of its Motion.  See, *infra*,

Section VI (Fourth Amendment claims).  However, a few additional points bear mentioning here.

Plaintiffs have stated that the District's foster care and adoption system has functioned

negligently and outside requirements set by Federal and District laws since 1987.  Further, the

District and its policymakers have adopted unconstitutional / illegal policies and practices

regarding the placement of children for adoption and the removal of children from their homes.

Complaint ¶ 177.  The persistent and widespread customs and practices of the District have

historically violated the rights of children and their families and has continued through the

present day.[9]

In 1991, this Court made the following finding:

The Court has found that the DHS has, at least since 1987, consistently failed to
comply with the requirements of the federal Adoption Assistance Act, the
District's Abuse and Neglect Act, the CFSD Manual of Operations, and
reasonable professional standards. Although common sense dictates that these
widespread and systemic deficiencies have caused harm to the children in the
District's foster care, plaintiffs have nevertheless introduced substantial
uncontroverted evidence regarding the nature and scope of that harm.

*LaShawn A.*, 762 F. Supp. at 982 - 983.  Four years later, this Court held the District in civil

contempt for failing to comply with numerous provisions of the Court's orders and placed

---

[9]  Plaintiffs are not asserting that CFSA has not improved over these many years of Court
supervision.  However, the improvements have obviously not reached into the areas addressed in
Plaintiffs' Complaint.

CFSA's predecessor agency in full receivership. *LaShawn A. v. Kelly*, 887 F. Supp. 297 (D.D.C. 1995). Under the present Remedial Order and Implementation Plan, it is expected that CFSA will be under Court supervision at least until 2006.

The Plaintiffs are victims of the persistent, widespread and systemic deficiencies that have harmed the District's children and families for many years. Plaintiffs have identified the District's historic failures as documented in *LaShawn A.* Complaint ¶ 20 - 23, 32, 36, 177. It is these failures and the culture that supports them that has allowed the policies, customs, and practices to continue to exist that have resulted in injuries to the Plaintiffs.

Plaintiffs have satisfied the requirements for pleading § 1983 municipal liability. The Defendants motion to dismiss Plaintiffs § 1983 claims against the District should be denied.


**XII.    Plaintiffs' Conspiracy Claims**

Defendants claim that the Plaintiffs conspiracy claims must be dismissed based upon application of the intracorporate conspiracy doctrine. Def. Mem. at 14 - 15. However, the Supreme Court has not recognized intracorporate conspiracy as a basis for denying relief pursuant to 42 U.S.C. § 1985(3). *Great American Federal Savings & Loan Association v. Novotny*, 422 U.S. 366, 372 n. 11 (1979). In *Novotny*, the Court assumed without deciding "that the directors of a single corporation can form a conspiracy within the meaning of § 1985 (3)."

In addition, Defendants fail to discuss application of any of the exceptions to the intracorporate conspiracy doctrine. Where the participants in a conspiracy act out of personal bias or where there are a series of discriminatory acts, the intracorporate conspiracy doctrine may not be applied. See, *e.g.*, *Weaver v. Gross,* 605 F. Supp. 210,  215 (D.D.C. 1985) (recognizing

scope of employment exception); *Craft v. Bd. of Trustees,* 516 F. Supp. 1317, 1324 (N.D. Ill.

1981); *Stathos v. Bowden,* 728 F.2d 15, 21 (1st Cir. 1984) (both cases recognizing the multiple

discriminatory acts exception).

In the instant case, Plaintiffs have alleged that the CFSA Defendants have engaged in

several discriminatory acts. See, *e.g.*, Complaint ¶ 65 - 126, 130, 144, 148, 166. Plaintiffs

allegations are sufficient to survive a motion to dismiss. In addition, Plaintiffs should be allowed

discovery in order to further establish exceptions to the application of the intracorporate

conspiracy doctrine.


**XIII. Plaintiffs' Have Stated a Valid Punitive Damage Claim Against the District**

The Defendant District of Columbia argues that punitive damages may not be awarded

against it. Def. Mem. at 15 - 16. While punitive damages are limited, it is not correct to state

that such damages may in no instance be awarded against the District. In a recent decision, this

Court reviewed the law regarding punitive damage awards against the District concluding that

punitive damages may be awarded when warranted by "extraordinary circumstances." *Feirson v.*

*District of Columbia*, 315 F. Supp. 2d 52, 57 - 58 (D.D.C. 2005). Such extraordinary

circumstances are pled by the Plaintiffs. They assert that since 1987 the District has created and

maintained a foster care and adoption system that operates negligently and below District and

Federal standards. Complaint ¶ 177. In more than fourteen years of Court supervision, the

District has resisted coming into compliance with basic standards in many areas negatively

impacting children and families, including issues raised in this case. Even if the District can now

argue that it is making every effort to cooperate with the Court and meet its obligations under

District and Federal law, it has still failed to come into full compliance to date.  This appalling

inability to manage and timely improve programs and services essential to protecting and

preserving the fundamental rights of its most vulnerable citizens warrants an award of punitive

damages.


**XIV.    Supplemental Jurisdiction**


Defendants next argue that because they expect all of Plaintiffs federal claims to be

dismissed, then this Court should refuse to exercise supplemental jurisdiction and dismiss the

remaining claims.  Def. Mem. at 16 - 18.  While it seems unlikely based upon the arguments

raised herein that all of Plaintiffs' claims will be dismissed, even if they were, the Defendants

have failed to recognize that Plaintiffs' claim that Defendants have violated this Court's orders in

*LaShawn* are certainly a remaining federal claim that Defendants have not sought to dismiss.

Complaint ¶ 169 - 174.  Consequently, at least one federally based claim will remain and the

Court should exercise jurisdiction over the balance of the remaining claims.

However, even if all of Plaintiffs' federal claims were dismissed this Court could still

exercise supplemental jurisdiction.


As an initial matter, we do not understand why the district court believed that it
had to dismiss Atchinson's common-law claims once it had dismissed all federal
claims in the case. The federal statute providing for supplemental jurisdiction over state-law
claims allows a federal district court to retain supplemental jurisdiction over state-law claims
even after dismissing all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3)
(1994) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim ... if ...
(3) the district court has dismissed all claims over which it has original jurisdiction ..." (emphasis

added).); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.), *cert. denied*, 129 L. Ed. 2d 814, 114 S. Ct. 2680 (1994).

*Atchinson*, 73 F.3d at 424.   In light of the likelihood of at least one federal claim remaining, and the availability of supplemental jurisdiction, the Court should reject Defendants' request and maintain jurisdiction over the case.

## XIV.   Conclusion

The Defendants' motions should be denied.  The Plaintiffs have alleged detailed facts and claims which when viewed in a light most favorable to the Plaintiffs clearly defeat the Defendants' Rule 12(b) and summary judgment motions.

Respectfully submitted,

____/s/_____
John M. Clifford, D.C. Bar No. 191866
Clifford & Garde
1707 L Street, NW, Suite 500
Washington, D.C. 20036
Tel. 202.289.8990

Dated: July 5, 2005

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

**CARLA AND ROBERT DOE**, *et al.,*          }
                                             }
     Plaintiffs,    }
     v.              }
                                             }          Case No.  05-1060 (RBW)
                                             }
**THE DISTRICT OF COLUMBIA,** *et al.*       }
                                             }
     Defendants.     }
_____}

## ORDER

Upon consideration of Defendants' Motion to Dismiss and/or for Summary

Judgment, and of the memoranda submitted in support thereof and in opposition

thereto, it is by the Court, this _____ day of _____, 2005

     ORDERED:   That Defendants' Motion be and it is hereby DENIED.


_____
United States District Judge