UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

LASHAWN A., et al.,

    Plaintiffs,

v.        89-cv-1754 (TFH)

ANTHONY A. WILLIAMS, as Mayor of the District of Columbia, et al.,

    Defendants.

---

CARLA DOE, et al.,

    Plaintiffs,

v.        05-cv-1060 (RBW)

DISTRICT OF COLUMBIA, et al.,

    Defendants.

---

## NOTICE OF RELATED CASE AND SUGGESTION OF TRANSFER

Pursuant to Local Civil Rule 40.5(b)(3), counsel for the plaintiff class in LaShawn A. v. Williams, No. 89-cv-1754 (TFH), hereby give notice that a related case has been filed in this District, Doe v. District of Columbia, No. 05-cv-1060 (RBW), and hereby suggest that it be transferred to Chief Judge Thomas F. Hogan, before whom the LaShawn case is pending.

Counsel for the LaShawn plaintiffs recently became aware of the existence of the Doe case through an e-mail communication from plaintiffs' counsel in that matter. A review of the papers filed by the parties in that case shows that the Doe case is related to the LaShawn case under Local Civil Rule 40.5(a)(3).

LaShawn was filed in 1989 and assigned to Judge (now Chief Judge) Hogan, and it remains open and active on his docket. It is a certified class action on behalf of a plaintiff class defined as:

> All children who, as the result of alleged or suspected abuse or neglect, are in the legal and/or physical custody of the District of Columbia Department of Human Services; and the presently-identifiable children who are not in the Department's legal or physical custody but who have been the victims, or are at risk, of neglect or abuse of which the Department knows or should know as a result of notice to or filings with the Department; not including, however, any member of the class certified in Bobby D. v. Barry, Civil Action Misc. No. 16-77 (D.C.Super.Ct. July 7, 1980), who remains in the foster-care custody of the Department of Human Services, with respect to those issues addressed by the judgment entered in that action.

LaShawn v. Dixon, 762 F.Supp. 959, 994 n.28 (D.D.C. 1991) (citing class certification order). The Complaint in Doe alleges that in 1997, the children Wayne and Sara Doe were placed in foster care and were found by the D.C. Superior Court to be neglected. (Doe Compl. [DKT # 3] at ¶¶ 40, 43.) Though Wayne and Sara were adopted by the Does in 2001 (id. at ¶ 54), they were again placed in foster care in October 2004—initially pursuant to a removal by CFSA and thereafter pursuant to a voluntary placement agreement by the Does. (Id. at ¶¶ 93, 114.) As of the date of the filing of the Doe complaint, it appears that Wayne and Sara were still in CFSA custody and may in fact still be in the LaShawn class.

Sara and Wayne allege that they have an entitlement, pursuant to Judge Hogan's orders in LaShawn, to post-adoption services. (Doe Compl. at ¶¶ 169-74.) The genesis of this alleged entitlement is their status as former (and, possibly, current) members of the LaShawn class—the benefit of post-adoption services runs to those children who, having been members of the class, are then adopted out of it.

As the plaintiffs in Doe recognize, two court orders entered in the LaShawn case govern the operations of the Child and Family Services Agency: the Modified Final Order, dated November 19, 1993 and adopted in full by Judge Hogan on January 27, 1994 [LaShawn DKT # 222], and the Implementation Plan, dated April 2003 and approved by Judge Hogan's order on May 15, 2003 [LaShawn DKT # 809]. These are extraordinarily complex and detailed orders that mandate ongoing institutional reforms within the Child and Family Services Agency, under the continuing close supervision of the Court.

Judge Hogan regularly exercises oversight with regard to the implementation of the governing orders in LaShawn. Since the LaShawn Modified Final Order went into effect, the parties and the Court-appointed monitor (the Center for the Study of Social Policy) have been before Judge Hogan for status hearings repeatedly, including four times since last December. At the most recent hearing on August 4, the Court ordered CFSA to file bi-weekly reports regarding CFSA's progress in making timely and accurate payments to contractors. The Monitor reviews data and other CFSA-produced information on a regular basis (including some items that are reviewed daily); issues detailed reports to the Court on the Defendants' compliance with the Court's orders; and provides technical assistance to CFSA where necessary and appropriate. The Monitor expects to issue another report sometime this fall, and the Court has scheduled another status conference for November 9. In short, the LaShawn case is an enormous endeavor of great complexity which is subject to the regular and ongoing involvement of Judge Hogan.

The Doe case, filed in May 2005 and assigned to Judge Walton, grows out of the same "event" as LaShawn, namely, the alleged failure of CFSA to comply with legal mandates regarding the treatment of children under its jurisdiction. (LCvR 40.5(a)(3).) In fact, the Doe plaintiffs explicitly rely on LaShawn in three distinct ways:

1. Count XXII of the complaint alleges a "Violation of this Court's Orders and the Implementation Plan Provided in LaShawn." (Doe Compl. at ¶¶ 169-74.) In this count, the Doe plaintiffs allege, essentially, that the LaShawn Modified Final Order and Implementation Plan create a private right of action for individual families who allege that CFSA has failed to provide them post-adoptive services. Plaintiffs' Prayer for Relief goes on to request an order directing the defendants to "provide all post-adoption services requested herein consistent with the needs of the Plaintiffs and this Court's Orders in LaShawn and the Implementation Plan." (Id., Prayer for Relief ¶ (E).)

2. Count IV of the complaint alleges that the defendants violated the Doe plaintiffs' First Amendment rights by engaging in retaliation in response to plaintiffs' request for post-adoptive services which "CFSA is required to provide to adoptive families under District of Columbia law [and] this Court's Orders in LaShawn." (Id. at ¶¶ 133-34.)

3. In its recitation of facts, the Doe complaint refers repeatedly to the procedural and substantive history of the LaShawn litigation, intertwining the Doe facts and LaShawn references in a unified timeline. (See, e.g., id. at ¶¶ 20-36.) Similarly, in their brief in opposition to the defendants'

4

motion to dismiss, the Doe plaintiffs state, "Training on a variety of issues has been a serious problem historically for CFSA." (Doe DKT # 18 at 17 n.7 (citation omitted); see also id. at 27-28.)

Among other disputes between the Doe parties, there are at least two key disagreements over the legal impact of the LaShawn case. First, the parties dispute whether Judge Hogan's orders in LaShawn can be "enforced" in an independent civil action filed by plaintiffs such as the Does. See, e.g., Defendants' Reply to Plaintiffs' Opposition to Their Motion to Dismiss or in the Alternative for Summary Judgment (Doe DKT # 20 at 3.) Second, assuming that there is a viable individual "LaShawn claim," the parties dispute whether such a claim is a federal law claim or a local law claim. (Compare Doe DKT # 18 at 30 with Doe DKT # 20 at 11.)

It is therefore plain that the allegations and legal claims in Doe substantially overlap with Judge Hogan's ongoing supervision of CFSA under LaShawn. Accordingly, the LaShawn plaintiffs respectfully suggest that the Doe case should be transferred to Judge Hogan. See Norris v. Slothouber, 718 F.2d 1116, 1117 (D.C. Cir. 1983) ("Because Norris' allegations substantially overlap those in Campbell, his case should be referred to the district judge before whom the Campbell action is pending."). To do otherwise would risk a situation in which two peer courts were making rulings flowing directly from a matter that was open before one of the two courts. For example, Judge Hogan and Judge Walton could make inconsistent rulings on the meaning of the Modified Final Order and the Implementation Plan, leading to confusion and undermining the stability of the law. See Groseclose v. Dutton, 829 F.2d 581 (6th Cir. 1987).

Additionally, insofar as Wayne and Sara Doe's <u>LaShawn</u>-based claims are predicated on their status as former (and possibly current) members of the <u>LaShawn</u> class, it is all the more important for their case to be transferred. "[I]n order to avoid duplicative actions as well as inconsistent interpretations of the same decree, wherever possible the individual claims should be processed by the same court which renders the equitable relief." <u>Goff v. Menke</u>, 672 F.2d 702 (8th Cir.1982).

        Respectfully submitted,

_____
Marcia Robinson Lowry, *pro hac vice* in <u>LaShawn</u>
Erik Pitchal, *pro hac vice* in <u>LaShawn</u>
Children's Rights
404 Park Avenue South, 11th Floor
New York, NY 10016
(212) 683-2210


_____
Arthur B. Spitzer, D.C. Bar No. 235960
American Civil Liberties Fund of the National Capital Area
1400 20th Street, N.W.
Washington, D.C. 20036
(202) 457-0800

Counsel for Plaintiffs in <u>LaShawn v. Williams</u>

August 9, 2005