# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLA AND ROBERT DOE**, *et al.*, | } |
| | } |
| Plaintiffs, | } |
| | } |
| v. | } Civil Action No.  05-1060 (TFH) |
| | } |
| **THE DISTRICT OF COLUMBIA,** *et al.,* | } |
| | } |
| Defendants. | } |
| _____ | } |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Carla and Robert Doe, *et al.*, by and through counsel, submit the following opposition to Defendants' Motion to Dismiss or Motion for Summary Judgment.

## I.     Standard of Review

### A.     Motion to Dismiss Under Rule 12(b)(6).

A dismissal pursuant to a Rule 12(b)(6) is only appropriate when no set of facts set forth in the pleadings could support a viable claim for relief.  The Court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *see also Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C. Cir. 1987).  This is a liberal standard under which most complaints will not be dismissed, unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 514, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)).  The court must accept all

the factual allegations of the complaint as true, construe the complaint liberally in favor of the

plaintiff, and grant plaintiff the benefit of all inferences derived from the facts alleged. *Dye v.*

*U.S.*, 561 F.Supp. 2d 61, 68 (D.D.C. 2007) (internal citations omitted).

### B. Motion for Summary Judgment

Summary judgment should be granted when,

> the pleadings, depositions, answers to interrogatories and admissions on file,
> together with any affidavits or declarations, show that there is no genuine issue as
> to any material fact and that the moving party is entitled to judgment as a matter
> of law. Material facts are those that "might affect the outcome of the suit under
> the governing law." The party seeking summary judgment bears the initial burden
> of demonstrating an absence of a genuine issue of material fact.

*Lerner v. District of Columbia*, 362 F. Supp.2d 149, 158 - 159 (D.D.C. 2005) (internal

citations omitted). The non-moving party must provide evidence that would permit the

fact-finder to find in its favor, and the court must draw all reasonable inferences

accordingly. *Id.*

Defendants seek to dismiss Defendants Maxwell, Jackson, Stowe and Phillipart because

they claim service was invalid. The facts surrounding the service issue are in dispute and

summary judgment would not be appropriate.[1]

## II. The Motion to Dismiss Should Be Denied.

### A. The Motion to Dismiss Should be Denied Because Plaintiffs' Service on the Individually-Named Defendants Was Proper.

Dismissal of the Amended Complaint is not appropriate because the individually-named

Defendants were properly served. Defendants assert that they were not served as required by

Federal Rule 4, which states that service must be accomplished by delivering a copy of the

---

[1]  If the Court finds that service was insufficient, Plaintiffs request that the Court allow limited early discovery to permit the acquisition of current or last known home and business addresses for these individuals from the District. The individuals are known to the District and service on these current or former public officials should not be a game of cat and mouse.

summons and complaint to the individual personally or by delivering the summons and complaint to an authorized agent. Defendant's Memorandum of Points and Authorities ("Def. Mem.") at 7-8.

On May 31, 2005, Dwayne Boston, a professional process server employed by Capitol Process Services, served a summons and complaint on each of individual Defendants employed by Child & Family Services Agency (CFSA) through their authorized agent, Kia Winston. Proof of service was filed with this Court. See, Return of Service, Docket entries 5-6, 8-12. The individual Defendants served were: Brenda Donald Walker, Sarah Maxwell, Sandra Jackson, Heather Stowe, Terri Thompson Mallet, Rebekah Philippart, and Daphne King,

Contrary to the sworn declaration provided by Ms. Winston, Mr. Boston testifies that Ms. Winston was informed that he was serving a summons and complaint for each of the individuals employed by CFSA. Declaration of Dwayne Boston ("Boston Dec.") ¶ 1-3. Ms. Winston stated that she was authorized to accept service and signed a routing slip for each of the individuals served. Boston Dec. ¶ 1, 3; Attachments: Service Work Sheets Signed by Kia Winston.[2] Ms. Winston did not advise Mr. Boston that he should serve the CFSA Defendants separately, nor does he recall her saying that Defendant Mallett no longer worked at CFSA and that leaving documents with her (Ms. Winston) would be insufficient service. Boston Dec. ¶ 6 - 8. Finally, contrary to Ms. Winston's sworn statement that she does "not have the authority to accept subpoenas for any particular social worker or employee," Mr. Boston provides true and accurate copies of affidavits that were provided as proof of service in other cases where Ms. Winston accepted service of subpoenas for various employees. Boston Dec. ¶ 5; Attachments: Copies of Service Affidavits Noting Service of Subpoenas Accepted by Kia Winston.

---

[2] The service work sheets are redacted in part to remove information that would identify the Plaintiffs.

Defendants assert that there are no material facts in dispute on the issue of service, but the facts Defendants rely upon are clearly in dispute.    Boston Dec. ¶ 1-8, Attachments.  Mr. Boston, a professionally trained process server with many years of experience, has never certified that he completed service if he could not locate or personally serve a proper party. Boston Dec. ¶ 8.  He would not have left the summonses and complaints with Ms. Winston, if she had refused to accept service, or indicated that she was not authorized to accept service. Boston Dec. ¶ 1-3, 8.

Further, Ms. Winston's claimed lack of authority is perplexing.  Ms. Winston asserts that she does "not have the authority to accept subpoenas for any particular social worker or employee."  Declaration of Kia Winston ("Winston Dec.") ¶ 4.   However, the records indicate that Ms. Winston has accepted service of subpoenas for individual social workers or employees on numerous occasions.   Boston Dec. ¶ 5: Attachments.   Ms. Winston claims she has no authority to accept subpoenas, yet she has done so on many occasions.  It is unlikely that her acceptance of service on this occasion was unauthorized.

Defendants' motion to dismiss on the basis of improper service should be denied. However, should the Court find the motion has merit, Plaintiffs request the Court allow limited early discovery in order to fully address the alleged dispute regarding service and to locate the home addresses of the CFSA Defendants before ruling on this motion.

**B.     The Claims Against Defendant Mayor Fenty in His Official Capacity are not Subject to Dismissal.**

Defendant Mayor Fenty argues that he should be dismissed from this suit because a suit against him in his official capacity is the same as a suit against the District of Columbia.  Def. Mem. at 9.  Defendant Mayor's analysis is flawed because it fails to consider Plaintiffs' claims for prospective, injunctive relief.  Amended Complaint at ¶ 222.

An official such as Defendant Mayor, who serves as the chief executive overseeing the actions and policy priorities of the CFSA, is responsible for ensuring that CFSA complies with statutory and regulatory obligations.  A state actor may be sued in his official capacity for prospective, injunctive relief.  *Ex Parte Young*, 209 U.S. 123, 155-56 (1908);  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 n. 10 (1989) (for purposes of injunctive relief state officials may continue to be sued in their official capacities even though they may be sued for damages only in their personal capacity).

Defendant Mayor serves an important role in ensuring that CFSA and its officials render to Plaintiffs the services they are due, and protect Plaintiffs and others from illegal, misguided actions and policies.  Mayor Fenty's dismissal from suit should be denied as it disturbs the well established precedent that a state actor may be sued in his official capacity for prospective, injunctive relief

   C.    **The Motion to Dismiss Should be Denied Because Plaintiffs' Constitutional Claims are Adequately Pled.**

        1.    **Plaintiffs' First Amendment Claims are Adequately Pled.**

Defendants assert that the Plaintiffs' First Amendment claims must be dismissed because they fail to "show a nexus between their First Amendment speech and any action taken by defendants."  Defendants also claim that "plaintiffs' private complaints and grievances are not 'constitutionally protected activit[ies]' under the First Amendment.  Def. Mem. at 12. Defendants' misconstrue the relevant law and their arguments fail to meet the appropriate standard for dismissal.

Plaintiffs' factual allegations, viewed together with the prevailing legal standards, demonstrate valid First Amendment claims.   In Counts IV and V, Plaintiffs assert that the Defendants retaliated against Plaintiffs for petitioning CFSA for assistance and for speaking out

about the needs of their family and CFSA's obligations under District and Federal law, as well as this Court's Orders in *LaShawn*.[3]  Amended Complaint ¶ 164-170.  The bases for these claims began to unfold shortly after Plaintiffs sought help from CFSA as an adoptive family in crisis. See, Amended Complaint ¶ 64-152.

Plaintiffs' statements and petitions to District government agencies are protected under the First Amendment as private speech and petitions.  Even speech and petitions concerning personal grievances are protected.  The applicable legal standard is:

> while speech on topics of public concern may stand on the "highest rung" on the ladder of the First Amendment, private speech (unless obscene or fighting words or the like) is still protected on the First Amendment ladder.  The rationale for a public/private concern distinction that applies to public employees simply does not apply to citizens outside the employment context. By the same token, the decisions of the Supreme Court and of [the Third Circuit] have not established a public concern threshold to the protection of citizen private speech.

*Eichenlaub v. Township of Indiana*, 385 F.3d 274, 284 (3rd Cir. 2004) (internal citations omitted).  Private citizens are protected under the First Amendment even if the speech is not on matters of public importance.

In fact, this Circuit has not instituted a public concern/importance requirement for First Amendment protection.  Even prisoners are protected from retaliation for engaging in protected First Amendment speech.  *Crawford-El v. Britton,* 93 F.3d 813, 826 (D.C. Cir. 1996), *vacated on other grounds,* 520 U.S. 1273 (1997) (withholding prisoner's property in retaliation for exercise of his First Amendment speech rights would indeed be a violation of clearly established law).

---

[3]  *LaShawn A. v. Williams*, Case No. 89-1754 (TFH).  In June 1989, a class action lawsuit was filed against the District of Columbia because the District had failed to provide legally sufficient care and services for children and families involved in the foster care system.  See, *e.g.*, *LaShawn A. v. Dixon*, 762 F. Supp. 959, 982 - 983 (D.D.C. 1991).  This Court has now been involved in the oversight of CFSA for more than seventeen (17) years.

The Tenth Circuit explained the applicable standard when the First Amendment retaliation is orchestrated by persons other than the victim's employer.

> We have stated that "any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." We have required proof of the following elements: (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." That approach has been followed by other circuits.

*Worrell v. Henry*, 219 F.3d 1197, 1212 - 1213 (10th Cir. 2000) (internal citations omitted). Other Circuits concur with these elements. See, *e.g.*, *Izen v. Catalina*, 382 F.3d 566, 571 (5th Cir. 2004).    The law clearly establishes that the First Amendment protects the "private complaints and grievances" of citizens, thus Defendants' recitation of the law is incomplete and incorrect. Def. Mem. at 12.

The Amended Complaint establishes all three necessary elements of a First Amendment official retaliation claim.    The Amended Complaint states that Plaintiffs engaged in constitutionally protected activities.  Plaintiffs Carla and Robert Doe requested assistance from CFSA, raised concerns about CFSA's evaluation and care of Wayne and Sara, demanded that agency officials provide adequate services for their children, objected to offers of inadequate services or assistance, objected to the interview process at the Children's Advocacy Center, and raised concerns about the planning, security, and care of their children at DYRS.  Amended Complaint ¶ 65-152.  After engaging in these activities, Defendants subjected Plaintiffs to gross personal violations with devastating effects on all the children.  Plaintiffs were harassed and retaliated against, culminating in the unlawful removal of their children from their home, false

charges that they had sexually abused their children, initiation of juvenile charges against Wayne and Sara, and removal of DYRS services and CFSA support. Amended Complaint ¶ 83-152.

There is a nexus between Plaintiffs' constitutionally protected activity Defendants' actions. Defendants' argument that the Amended Complaint "fail[s] to show a nexus between their alleged First Amendment speech and any action taken by the defendants" is inaccurate. Def. Mem. at 12. The impact of this gross conduct had a devastating effect on all of the Plaintiffs, especially the fragile children who were struggling with issues of abuse and trauma. Amended Complaint ¶ 117-152. There can be little doubt that the actions of the government and individuals would "chill a person of ordinary firmness" to the bone, as required by law. Plaintiffs suffered severe emotional distress, anxiety, post-traumatic stress and related problems as a direct and proximate result of Defendants' actions.

The Amended Complaint also presents evidence that Defendants' actions were substantially motivated in response to Plaintiffs' exercise of constitutionally protected conduct. Plaintiffs have asserted that the Defendants were concerned about Plaintiffs Carla and Robert Doe blaming CFSA for the untreated illnesses suffered by Wayne and Sara which caused them to abuse Ann and Oliver. Amended Complaint ¶ 73. Plaintiffs challenged the inadequate services offered by the CFSA Defendants. Amended Complaint ¶ 75, 79.

In response to Plaintiffs constitutionally protected actions, Defendants promptly attacked Plaintiffs. Although a CFSA investigation determined that Plaintiffs Carla and Robert Doe had not failed to properly supervise or protect their children (Amended Complaint ¶ 78), the Defendants nonetheless insisted on taking their children without a basis in law or fact. Amended Complaint ¶ 83 - 114. DYRS took similarly shocking retaliatory action when Robert and Carla Doe challenged the agency's actions. Amended Complaint ¶s 134 – 152.

8

The proximity in time of these events to the requests Plaintiffs were making for adequate services creates a strong inference of retaliatory motive. *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C.Cir.2006) (quoting, *Mitchell v. Baldrige*, 759 F.2d 80, 89 (D.C.Cir.1985)); *Chungchi Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir.2003) ("Temporal proximity is but one method of proving retaliation.... Evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection."). Moreover, the false allegations of sexual abuse and the removal of children without basis are strong indicators of animus and improper motive.

In sum, the Plaintiffs clearly state sufficient facts to establish claims of retaliation under the First Amendment. The Defendants' motion to dismiss this issue should be denied.

### 2.    Plaintiffs' Fourth Amendment Claims Against All Named Defendants Are Adequately Pled.

Defendants argue that Plaintiffs do not have a viable Fourth Amendment claim because they suggest that "probable cause" existed to take Robert and Carla's children and that "they agreed to the removal of Ann and Oliver [and Sarah] from their homes." Def. Mem.at 13–14.

The relevant facts, as articulated in the Amended Complaint describe how the CFSA Defendants orchestrated the illegal removal of Plaintiffs Carla and Robert Doe's children from their home. *Id.* Based on CFSA Social Worker Delores Williams' investigation, the CFSA Defendants knew there was no danger posed to the children, and that Carla and Robert Doe took appropriate precautions once the abusive conduct of Wayne and Sara was discovered. Amended Complaint ¶ 77. Defendant Mallett specifically threatened Carla and Robert Doe with police arrest if they did not cooperate with their children being placed in foster care. Amended Complaint ¶ 89. Defendants also refused to seek approval from a court prior to taking the child Plaintiffs from their home. Amended Complaint ¶ 88, 90.

When Defendants Philippart and King arrived at the Plaintiffs' home to take the children they could not explain what imminent danger was posed to the children requiring their removal. Amended Complaint ¶ 92-94.   Nor could Defendants Philippart and King articulate the legal basis or authority for taking the children.   Amended Complaint ¶ 94-95.   In fact, the legal notice provided to Carla and Robert Doe was incomplete and unsigned.   Amended Complaint ¶ 92.

Under District of Columbia law, in order for CFSA officials to take children into custody *without a court order* the agency must have "reasonable grounds to believe that the child is in immediate danger from his or her surroundings *and* that the removal of the child from his or her surroundings is necessary."   D.C. Code § 16-2309(a)(3) (emphasis added).[4]   CFSA investigative Social Worker Delores Williams determined *prior* to the Defendants' illegal removal of Ann, Oliver, and Sara that there was no "immediate danger."   Amended Complaint ¶ 76-77. Moreover, no Defendant provided Plaintiffs with any factual or legal bases for taking the children either before or after it occurred.   Defendants' had no information to justify the removal, resulting in their decision to "no paper" the case initiated against Carla and Robert Doe. Amended Complaint ¶ 101-106.[5]

Cases that address similar circumstances have held that the agency or individuals involved may be liable for violating the child's or parent's Fourth Amendment rights. See, *e.g.*,

---

[4]   Moreover, CFSA policy at the time regarding removals was significantly violated when Defendants took action against Plaintiffs.   CFSA Policy Procedure U: Removal and Placement presents CFSA's view of the proper steps in removing children from their home.   For example, the policy requires CFSA to consider providing a family with services or other supports that will "ameliorate" the alleged abuse or neglect.   Procedure U ¶ 2.   The investigations worker must consult with the Supervisor and Program Manager in conducting a removal.   Procedure U ¶ 3. An affidavit of reasonable efforts is supposed to be prepared, identifying what efforts were undertaken to attempt to avoid removal.   Procedure U ¶ 3(i), 10.   None of these requirements were followed by the Defendants.

[5]   In the face of these facts, Defendants' Motion is frivolous.

*O'Donnell v. Brown*, 335 F. Supp. 2d 787, 806 (D. Mich. 2004); *Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (7th Cir. 2000) (determining that a child who was carried out of his home, placed in a car, and driven away was not free to leave and thus was "seized" within the meaning of the Fourth Amendment); *Wooley v. City of Baton Rouge*, 211 F.3d 913, 925 (5th Cir. 2000) (the Fourth Amendment extends beyond criminal "arrests" to include civil "seizures"); *Tenenbaum v. Williams*, 193 F.3d 581, 601-606 (2d Cir. 1999) (analyzing removal of a child by the state during an abuse investigation as a seizure under the Fourth Amendment); *J.B. v. Washington County*, 127 F.3d 919, 928-31 (10th Cir. 1997) (county officials' temporary removal of a child is a seizure implicating the Fourth Amendment); *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000) (removal of children should be assessed under the Fourth Amendment).

Similarly, there is no evidence suggesting any legitimate bases for taking Plaintiffs Oliver, Ann, and Sara, and causing trauma, grief and emotional distress for each of them as well as the other Plaintiffs. Under such egregious circumstances, the actions of the CFSA Defendants cannot be deemed "reasonable" for qualified immunity or any other purposes.

Additionally, the facts describing Plaintiffs' Fourth Amendment claims (Count VI) indicate "customs, policies, and practices" of the District of Columbia that led to the illegal actions taken against the Plaintiffs. Plaintiffs' Amended Complaint more than adequately meets the requirements for pleading claims pursuant to 42 U.S.C. § 1983.

> There are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom;" or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations. Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard.

*Baker v. District of Columbia*, 326 F.3d 1302, 1306 - 1307 (D.D.C. 2003) (internal citation omitted). In the instant case, Defendants have taken actions or refused to act in a manner that reflects each of the ways in which a policy can be set by a municipality for the purposes of §1983 liability.

Plaintiffs in a § 1983 action are not required to meet a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993) (plaintiffs alleging municipal liability under 42 U.S.C. § 1983 need not satisfy any heightened pleading standard). In light of the liberal pleading standard, this Circuit has stated: "[a] complaint, in other words, need not allege all that a plaintiff must eventually prove." *Atchinson v. District of Columbia*, 73 F.3d 418, 421 - 422 (D.C. Cir. 1996). The Amended Complaint can be fairly read to take issue with the District's policies, practices, and customs concerning: (i) the training and supervision of employees, (ii) removal of children from their home, and (iii) retaliation for speaking out about services and seeking assistance. Defendants' arguments to dismiss Plaintiffs' Fourth Amendment claims are without merit. The Court should deny Defendants' motion.

### 3.     Plaintiffs' Fifth Amendment Claims Are Adequately Pled.

Defendants' argue that Plaintiffs' Fifth Amendment claims are "boilerplate and generic" and "lack the necessary specificity to place these defendants on notice of what constitutional rights they allegedly violated." Def. Mem. at 15. As discussed above, a CFSA investigative social worker had reviewed Plaintiffs' circumstances and determined that there was no "imminent danger" to the children because Carla and Robert Doe had taken the necessary precautions. Amended Complaint ¶ 76-77. No services were offered to the family in order to ameliorate any purported danger to the children. Amended Complaint ¶ 83.

### a.      Plaintiffs' Substantive Due Process Rights Were Violated.

The Amended Complaint alleges facts that adequately plead a substantive due process right violation, so the Motion to Dismiss should fail.  Despite no indication of danger and a report by the investigating social worker to the contrary, Defendants' still pursued removal of the minor Plaintiffs without court involvement or court order.   Amended Complaint ¶ 83-106. Defendant Mallett threatened Carla and Robert Doe with police involvement or arrest.  Amended Complaint ¶ 89-91.  Plaintiffs Ann, Oliver, and Sara were removed from their homes based upon an unsigned piece of paper with no indication of who had approved the action.   Amended Complaint ¶ 92.  The social workers involved in the taking would not even articulate a basis for the removal.   Amended Complaint ¶ 92-95.   Once removed from home, the children were subjected to invasive examinations at Children's Hospital without legal authority or parental permission.  Amended Complaint ¶ 99.

The complaints filed in Superior Court accused Robert and Carla Doe of sexual abuse with no basis in fact.  Amended Complaint ¶ 103-105.  Then a juvenile action was initiated against Wayne and Sara that also lacked a basis in fact.  Amended Complaint ¶ 114-115, 120-125.

The Court should disregard Defendants' bald assertion that Plaintiffs' fail to plead facts that "support any claim of wrongful or arbitrary government action."  Def. Mem. at 16.  To this day, Plaintiffs' have never been told what imminent danger their children were in that would justify removal.  There are few government actions more wrongful and injurious than illegally removing children from their home.  Such action is particularly heinous when the removal is motivated by a desire to retaliate.

### b.      Plaintiffs' Procedural Due Process Rights Were Violated.

13

The Amended Complaint also adequately alleges a procedural due process rights claim. Plaintiffs were denied any process either informally or through the courts prior to the Defendants removing the minor Plaintiffs from their home. One court has described the procedural due process issue in a child removal case as follows:

> Procedural due process applies only to the deprivation of constitutionally protected liberty or property interests. To state a cognizable *§ 1983* claim based on the deprivation of procedural due process, the government's conduct in depriving a person of a protected liberty interest must go beyond mere negligence and must instead be grossly negligent, deliberately indifferent, or intentional. Here, there is no question that removing the children was intentional. Once the deprivation of a constitutionally protected liberty or property interest has been demonstrated, a court must determine whether a plaintiff was afforded adequate due process protection. Plaintiffs argue that the entry into the home and removal of the children deprived them of their protected liberty interest in family integrity, and that these events occurred without required pre-deprivation process.

*O'Donnell v. Brown*, 335 F. Supp. 2d 787, 809 (W.D.Mich. 2004) (internal citations omitted). There can be no legitimate dispute that Plaintiffs received no written order, no pre-deprivation hearing, and no information indicating the factual or legal bases for the removal of Ann, Oliver, and Sara. Moreover, as previously noted, CFSA's pre-removal investigation found no bases to claim the children were in danger. Amended Complaint ¶ 77. Consequently, this Court should deny the Defendants' Motion to dismiss Plaintiffs' Due Process claims.

### c.    Plaintiffs' Rights to Equal Protection Were Violated.

Defendants challenge Plaintiffs' Equal Protection claims (Counts IX and XI), arguing that the allegations are "conclusory." Def. Mem. at 17. The Amended Complaint alleges that Defendants pursued juvenile charges against Wayne and Sara only when the false charges of abuse could not be sustained against Robert and Carla Doe. In fact, the juvenile charges were brought the day immediately following CFSA's withdrawal of its charges of abuse against Robert and Carla. Amended Complaint ¶ 114, 115, 120–128. CFSA could have provided the same or superior services to those that could be obtained through the juvenile system but refused

to do so absent an abuse or neglect charge against Robert and Carla.  Had CFSA provided thorough and appropriate post-adoption services, the juvenile system would not have filed for custody orders and initiated action.

There was no rational basis for DYRS or CFSA to treat the Doe Family completely contrary to law, policies, or best practices.  The government responded to Plaintiff parents' demands for services by cutting off services to force Robert and Carla Doe to relinquish their parental rights.  Amended Complaint ¶ 146–152.  These facts indicate Defendants' actions were vindictive and irrational.

The Supreme Court has recognized that vindictive and irrational conduct by a government agency violates the Equal Protection clause.

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. In so doing, we have explained that " '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' "

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation omitted).  Plaintiffs have adequately pled their claims asserting violation of the Equal Protection clause, thus the Motion to Dismiss should be denied.

### 4.    Plaintiffs' Ninth Amendment Claims are Adequately Pled.

Defendants assert that the Ninth Amendment does not provide Plaintiffs protection through any specific right.  Def. Mem. at 18.  Plaintiffs read the Ninth Amendment much like the Supreme Court did when it analyzed the Amendment in a series of famous cases defining some of the constitutional mechanisms that protect one's personal privacy.

The foregoing cases suggest that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and

substance.   See *Poe v. Ullman*, 367 U.S. 497, 516-522 (dissenting opinion).   Various guarantees create zones of privacy. The right of association contained in the penumbra of the First Amendment is one, as we have seen.   The Third Amendment in its prohibition against the quartering of soldiers "in any house" in time of peace without the consent of the owner is another facet of that privacy. The Fourth Amendment explicitly affirms the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fifth Amendment in its Self-Incrimination Clause enables the citizen to create a zone of privacy which government may not force him to surrender to his detriment.   The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

*Griswold v. Connecticut*, 381 U.S. 479, 484 (1965).   The majority's reference to the Ninth Amendment in *Griswold* was not accidental or superfluous.   The Ninth Amendment ensures that protections not specifically enumerated in the Constitution are available to the people.

Plaintiffs are not only asserting a general liberty interest and right to privacy that Defendants violated, but a right to be free from familial separation, the right of parents to protect their children, the right of siblings to remain together, and the right of fragile children to be free from unlawful intrusion which causes harm.   The Amended Complaint can be fairly read to raise significant privacy issues that are protected by the Ninth Amendment's guarantee.   Amended Complaint ¶ 177-179, 183-185.   Therefore, this Court should not dismiss the Plaintiffs' claims of protection under the Ninth Amendment.

**D.    Plaintiffs Are Entitled to Injunctive Relief.**

Defendants' argument to dismiss the injunctive relief sought by Plaintiffs is premature.   Def. Mem. at 23.   Defendants argue that Plaintiffs have not pled viable constitutional claims, however, as discussed above this argument is without merit.   Defendants' also assert that Robert and Carla Doe no longer have standing for injunctive relief because they relinquished their parental rights for Wayne and Sara.   This argument does not address the issues because Plaintiffs' seek permanent injunctive relief prohibiting Defendants from further violations of

their rights.  Amended Complaint ¶ 222(A).  Plaintiffs also asked for appropriate post-adoption services.  Amended Complaint ¶ 222(E).  Defendants argument is simply unavailing at this point and Plaintiffs should be allowed to discover and put on their proof regarding the injunctive relief sought.

Defendants argue that the facts pled in the Amended Complaint do not support a public interest argument that favors the injunctive relief.  This argument also ignores plain statements in the Amended Complaint.  See, *e.g.*, Amended Complaint ¶s 222 (I – K).  Thus, the Defendants' argument should be rejected.

## III.    The Motion for Summary Judgment Should Be Denied.

### A.    Summary Judgment Must Be Denied Because Defendants Failed to File a Statement of Material Facts.

Defendants' Motion for Summary Judgment must be denied because Defendants failed to file a statement of material facts, as required under the local rules.  The local rules require that a summary judgment motion include a "statement of material facts as to which the moving party contends there is no genuine issue."  Local Civil Rules 7(h) and 56.1.  A statement of facts included in the memorandum accompanying the motion is not adequate.  Defendants did not file a statement of facts, therefore, they are not entitled to summary judgment and the Court should deny their motion.

**B.      The Individually Named Defendants Are Not Entitled to Qualified Immunity.**

Defendants argue that individually named Defendants: Walker, Mallett, Stowe, Maxwell, Jackson, Philippart, and King are entitled to qualified immunity because "plaintiffs' failed to specifically identify any deprivation of a constitutional right." Def. Mem. at 19.  For purposes of a Rule 12 (b)(6) motion, Defendants are arguing that no set of facts pled by the Plaintiffs can lead to the conclusion that the CFSA Defendants are not entitled to escape liability through a qualified immunity determination.  In support of their argument Defendants glibly state that "the information these defendants had in their possession at the time they took any action" lead them to believe that their conduct was lawful.   Def. Mem. at 19.  This argument ignores both law and fact.

Qualified immunity "generally shields public officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)."  *Moore v. Hartman*, 388 F.3d 871, 872 (D.C. Cir. 2004).  More specifically, the Court in *Moore* stated:

> Underlying this doctrine is the basic principle of fair notice: officials may be held liable if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right;" otherwise, the unfairness of holding officials responsible on grounds they could not have anticipated trumps the individual's interest in vindicating transgressed rights. To ensure that shielding public officials from unclear law does not freeze the law in place, however, courts facing qualified immunity claims ordinarily engage in a two-step inquiry, considering first what the law is, and only then whether that law was clearly established.. Were the procedure otherwise, constitutional avoidance might lead courts to rest on findings of uncertainty without first clarifying the law for future cases--a result contrary to the interest of both government officials and individuals claiming that such officials violated their constitutional rights.
>
> Because the qualified immunity inquiry focuses on whether the officials could have known "what [they were] doing" was unlawful, defining the right "at the appropriate level of specificity" is critical. While the right need not have arisen in identical or even

"fundamentally" or "materially similar" circumstances, the right can be considered clearly established only if the unlawfulness was "apparent" in light of pre-existing law. The "salient question," then, is "whether the state of the law [at the relevant time] gave [the officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional."

*Moore*, 388 F.3d at 876 – 877 (internal citations omitted).   As discussed in *Moore*, the two-part analysis for a qualified immunity defense involves (1) establishing what the law is, and (2) whether the law was clearly established.   That is, whether the unlawfulness of the CFSA Defendants acts was apparent.

Plaintiffs have asserted facts establishing that the CFSA Defendants are not entitled to a qualified immunity defense.   To begin, it is clear that the CFSA Defendants acted unlawfully. As noted previously, absent a Court order, CFSA cannot remove children from their homes unless there are "*reasonable grounds* to believe that the child is in *immediate* danger from his or her surroundings *and* that the removal of the child from his or her surroundings is necessary." D.C. Code § 16-2309(a)(3) (emphasis added).   CFSA officials can also remove a child without first obtaining a Court order if there are "*reasonable grounds* to believe that the child is suffering from illness or injury or otherwise is endangered *and* that the child's removal from his or her surroundings is necessary."  D.C. Code § 16-2309(a)(4) (emphasis added).

Before Ann, Oliver, and Sara were removed from their home, the CFSA Defendants knew there was no immediate danger and that the children were not otherwise endangered. Amended Complaint ¶ 76-77.   The unlawful and retaliatory nature of the removal is also apparent from the other actions Defendants took.   Defendant Mallett refused to obtain a Court order or allow Plaintiffs to seek due process the children were removed.   Amended Complaint ¶ 90.   Defendant Mallett also threatened Robert and Carla Doe with police involvement (*e.g.*, arrest) if they did not relinquish their children.   Amended Complaint ¶ 89, 91.

The social workers (Defendants Phillipart, King, and others) who came to the Plaintiffs' home to remove the children provided no factual or legal bases for the removal. Amended Complaint ¶ 92-95. Robert Doe advised that the removal was improper, but the social workers refused to forego the removal. Amended Complaint ¶ 95. Because significant resistance would have further traumatized the children, on the advice of the children's therapist, Carla and Robert Doe prepared their children to be removed from their home. Amended Complaint ¶ 96. The actions of the Defendants in removing Ann. Oliver, and Sara were illegal and intended to retaliate against and intimidate Carla and Robert Doe, thus the unlawfulness of the actions should have been apparent to Defendants. Amended Complaint ¶ 99-105.

Following the removal, the Defendants were then forced to justify their action in Superior Court. They falsely claimed that Robert and Carla Doe had sexually abused their children, and failed to allege why the children were in imminent danger. Amended Complaint ¶ 92, 100–101, 103. As the Defendants' complaint against Robert and Carla Doe was utterly without merit Defendants decided to "no paper" the case and it was dismissed. Amended Complaint ¶ 106.

Frustrated with their failure make an abuse or neglect complaint stick, Defendants then initiated prosecution against Wayne and Sara. Amended Complaint ¶ 114-115, 120-124. This discriminatory and retaliatory action further damaged the already severely traumatized Plaintiffs.

The illegal and reckless nature of Defendants actions is abundantly clear. As the facts demonstrate, the CFSA Defendants violated Plaintiffs First, Fourth, Fifth, and Ninth Amendment rights. Amended Complaint ¶ 153-190. There can be little doubt that the CFSA Defendants knew or should have known that they acted in violation of District law standards with regard to removal of children. Not only do the facts establish that Defendants violated clearly established law, but the facts also indicate that Defendants acted with malice toward Plaintiffs. Most

20

troubling, however, is the fact that Defendants' malice was shamefully directed toward and damaged already hurt and fragile children. Considering the facts and law discussed herein, this Court should deny the CFSA Defendants request to escape liability through a qualified immunity defense.

### C. Defendants Are Not Entitled to Summary Judgment on the Conspiracy Claims.

Defendants claim that Plaintiffs conspiracy claims must be dismissed because of the intracorporate conspiracy doctrine. Def. Mem. at 20 - 21. However, the Supreme Court has not recognized intracorporate conspiracy as a basis for denying relief pursuant to 42 U.S.C. § 1985(3). *Great American Federal Savings & Loan Association v. Novotny*, 422 U.S. 366, 372 n. 11 (1979). In *Novotny*, the Court assumed without deciding "that the directors of a single corporation can form a conspiracy within the meaning of § 1985 (3)." *Id.*

In addition, Defendants fail to discuss application of any of the exceptions to the intracorporate conspiracy doctrine. Where the participants in a conspiracy act out of personal bias or where there are a series of discriminatory acts, the intracorporate conspiracy doctrine may not be applied. See, *e.g.*, *Weaver v. Gross,* 605 F. Supp. 210, 215 (D.D.C. 1985) (recognizing scope of employment exception); *Craft v. Bd. of Trustees,* 516 F. Supp. 1317, 1324 (N.D. Ill. 1981); *Stathos v. Bowden,* 728 F.2d 15, 21 (1st Cir. 1984) (both cases recognizing the multiple discriminatory acts exception).

Plaintiffs have alleged that the CFSA Defendants have engaged in numerous discriminatory acts. Plaintiffs allegations are sufficient to survive a motion to dismiss or for summary judgment. In addition, Plaintiffs should be allowed discovery in order to further establish exceptions to the application of the intracorporate conspiracy doctrine.

**D.      Plaintiffs' Have Stated a Valid Punitive Damage Claim Against the District and the Individual Defendants.**

Defendant argues that punitive damages may not be awarded against the District of Columbia. Def. Mem. at 21. While punitive damages are limited, it is not correct to state that such damages may in no instance be awarded against the District. In a recent decision, this Court reviewed the law regarding punitive damage awards against the District concluding that punitive damages may be awarded when warranted by "extraordinary circumstances." *Feirson v. District of Columbia*, 315 F. Supp. 2d 52, 57 - 58 (D.D.C. 2005). Plaintiffs plead such extraordinary circumstances. They assert that since 1987 the District has created and maintained a foster care and adoption system that operates negligently and below District and Federal standards. Amended Complaint ¶ 177. In more than fourteen years of Court supervision, the District has resisted coming into compliance with basic standards in many areas negatively impacting children and families, including issues raised in this case. Even if the District can now argue that it is making every effort to cooperate with the Court and meet its obligations under District and Federal law, it has still failed to come into full compliance to date. This appalling inability to manage and timely improve programs and services essential to protecting and preserving the fundamental rights of its most vulnerable citizens warrants an award of punitive damages.

Regarding the individual Defendants, Defendants' argue that "Plaintiffs have failed to plead any facts against any of the herein-named defendants which rise to the level of the outrageousness necessary for them to maintain a claim for punitive damages." Def. Mem. at 22. This statement is simply incorrect. Plaintiffs have alleged, *inter alia*, that the individual Defendants engaged in unlawful and retaliatory conduct against the Doe Family. See, *e.g.*, Amended Complaint ¶ 83, 86–106, 160, 163, 166, 169, 173, 176, 179, 182, 192, 194, 196, 198,

202, 204, 206, 208, 210, 220.  Plaintiffs have adequately pled punitive damages and following discovery will establish the wanton, willful and outrageous conduct of the individual Defendants.

> **E.    Plaintiffs' Amended Complaint Adequately Pleads Facts and Claims for Relief for Emma Doe.**

Defendants assert that the Amended Complaint does not satisfy general pleading requirements regarding the claims of Plaintiff Emma Doe.  Defendants' argument is without merit.  Emma Doe is now eighteen years old and was only fifteen at the time many of the events relevant to the Amended Complaint took place.  As a member of the Doe Family, Emma experienced all of the hardship and trauma that is associated with the events described in the Amended Complaint.  See, *e.g.*, Amended Complaint ¶ 18, 54–152.  Emma is included as one of Plaintiffs impacted in many of the counts detailed in the Amended Complaint.  See, e.g., Amended Complaint ¶ 156, 160, 166, 179, 198, 200, 212.  It is not difficult to understand that the malicious and outrageous actions of the Defendants greatly impacted Emma (as they would any child in such difficult circumstances).  Thus, Defendants argument should be rejected.

## IV.    If Necessary, the Court Should Grant Supplemental Jurisdiction.

Defendants argue that because they expect all of Plaintiffs federal claims to be dismissed, this Court should refuse to exercise supplemental jurisdiction and dismiss the remaining claims.  Def. Mem. at 23 - 25.  While it seems unlikely based upon the arguments raised herein that all of Plaintiffs' claims will be dismissed, even if they were, the Defendants have failed to recognize that the Court has the discretion to hear Plaintiffs' supplemental claims even if all federal claims are dismissed.  28 U.S.C. § 1367(c).

Plaintiffs' would be further harmed by the delay in transferring a case that has already waited for over two years.  Moreover, Plaintiffs will likely be able to allege diversity jurisdiction

with most, if not all, of the individual Defendants as many of them appear to live outside the District.

However, even if all of Plaintiffs' federal claims were dismissed this Court could still exercise supplemental jurisdiction.

> As an initial matter, we do not understand why the district court believed that it had to dismiss Atchinson's common-law claims once it had dismissed all federal claims in the case. The federal statute providing for supplemental jurisdiction over state-law claims allows a federal district court to retain supplemental jurisdiction over state-law claims even after dismissing all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3) (1994) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction ..." (emphasis added).); *Burns-Toole v. Byrne,* 11 F.3d 1270, 1276 (5th Cir.), *cert. denied,* 129 L. Ed. 2d 814, 114 S. Ct. 2680 (1994).

*Atchinson*, 73 F.3d at 424.   In light of the likelihood of that at least one federal claim will remain, and the availability of supplemental jurisdiction, the Court should reject Defendants' request and maintain jurisdiction over the case.

## V.    Conclusion

For the foregoing reasons, Plaintiffs request that the Court deny Defendants Motion to Dismiss and summary judgment.

Respectfully submitted,

/s/John M. Clifford
John M. Clifford, D.C. Bar No. 191866
Clifford & Garde
1707 L Street, NW, Suite 500
Washington, D.C. 20036
Tel. 202.289.8990

Dated: January 29, 2008