UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT AND CARLA DOE, *et al.*, <br> Plaintiffs, <br> v. <br> DISTRICT OF COLUMBIA, *et al.*, <br> Defendants. | Civil Action No. 05-1060 (TFH/RMM) |

**MEMORANDUM OPINION**

On January 10, 2017, this case was referred to the undersigned Magistrate Judge, pursuant to Local Civil Rule 72.2(a), for resolution of any discovery dispute.[1]  Pending before the Court is the Doe Plaintiffs' Motion to Compel ("Motion") [ECF No. 231], which challenges the adequacy of Defendant District of Columbia's response to Plaintiffs' Interrogatory No. 9. After reviewing the Motion, Plaintiffs' Memorandum in support thereof ("Memorandum") [ECF No. 231-1], Defendant District of Columbia's Opposition to Plaintiffs' Motion to Compel ("Opposition") [ECF No. 233], Plaintiffs' Reply ("Reply") [ECF No. 234], the representations of counsel at the February 7, 2017 status conference, and the entire record herein, the Court will deny the Motion without prejudice for the reasons set forth below.

**I. BACKGROUND**

**A.      Factual and Procedural History**

The Doe Plaintiffs filed suit against Defendant District of Columbia ("Defendant" or the "District") and several employees of the District's Child and Family Services Agency ("CFSA")

---

[1] This case was initially referred to Magistrate Judge Alan Kay, on February 17, 2016, for resolution of "any potential discovery matters." (2/17/2016 Minute Order.)  After Magistrate Judge Kay retired in early January, 2017, the case was reassigned to Magistrate Judge Meriweather.

after CFSA temporarily removed two of their children from their home without a court order,

alleging violations of District of Columbia law and the Constitution.  *See* First Amended

Complaint for Damages, Declaratory and Injunctive Relief [ECF No. 30], ¶ 96.[2]  Judge Hogan

dismissed the complaint in its entirety, and the Doe Plaintiffs appealed that decision.  *See Doe v.*

*District of Columbia*, 958 F. Supp. 2d 178 (D.D.C. 2013), *aff'd in part, vacated in part, Doe v.*

*District of Columbia*, 796 F.3d 96 (D.C. Cir. 2015); *Doe v. District of Columbia*, 796 F.3d 96

(D.C. Cir. 2015).  The opinions issued by Judge Hogan and the United States Court of Appeals

for the District of Columbia Circuit ("Circuit Court") thoroughly describe the factual and

procedural history of this case.  Accordingly, this opinion discusses only the facts and procedural

history pertinent to the resolution of Plaintiffs' motion to compel.

When evaluating the viability of Plaintiffs' constitutional claims against the District

under a theory of municipal liability, the Circuit Court concluded that the District's liability

would turn on whether "District policy allows for the warrantless removal of children when there

is no bona fide emergency," and, relatedly, whether the Doe children were "removed pursuant to

a custom or policy of the District."  *Doe*, 796 F.3d at 105.  The Circuit Court therefore reversed

the award of summary judgment to the District on the Fourth and Fifth Amendment claims and

remanded so that the District Court could determine whether those claims could proceed under a

municipal liability theory.

---

[2] Plaintiffs alleged a myriad of constitutional and common law claims, including claims for violation of their civil rights pursuant to 42 U.S.C. §1983.  *See* First Amended Complaint [ECF No. 30].  On March 7, 2008, Judge Hogan narrowed the claims against Defendants when he dismissed multiple counts and portions of additional counts.  *See* 3/7/2008 Order on Defendants' Motion to Dismiss [ECF No. 37].  The litany of claims surviving the Defendants' Motion to Dismiss included alleged violations of Plaintiffs' procedural due process rights under the Fifth Amendment; constitutional violations under the First and Fourth Amendments; and assorted claims for defamation, assault, negligence, and invasion of privacy, among other claims.  *See* 8/1/2013 Memorandum Opinion [ECF No. 208] at 8-9.

On remand, Judge Hogan granted Plaintiffs' motion to propound limited discovery that Plaintiffs characterized as being "focused on more fully developing facts and evidence that would be useful in answering the questions posted by the [Circuit Court]." Motion for Leave to Conduct Limited Discovery on Remand [ECF No. 223] at 1; 12/23/2015 Order [ECF No. 226] at 2. Plaintiffs propounded ten interrogatories on January 4, 2016. The discovery dispute involves Plaintiffs' Interrogatory No. 9.

**B.     The Parties' Discovery Dispute and Efforts to Resolve that Dispute**

Interrogatory No. 9 requests that Defendant:

> [P]rovide the material facts of each CFSA investigation for the time period of 2002 to 2007 that involved children being removed from their homes where a court order was not sought prior to the removal. The term "material facts" is used to mean (a) a case identifier that does not disclose the names of the parties involved, (b) the open and close dates for the case, (c) a description of the reason(s) CFSA got involved in the case, (d) a description of any exigent circumstances or immediate danger that played a role in the decision to remove, (e) the number of children involved, (f) the length of time the child(ren) remained in care outside the home, (g) a description of all services provided, if any, in order to avoid the need to remove the child(ren), and (h) a description of any safety plan the family had in place at the time of the removal.

Plaintiffs' Interrogatories on Remand [ECF No. 227] at 2-3. On February 5, 2016, the District objected to Interrogatory No. 9, arguing that it was overly broad and unduly burdensome. *See* Defendant District of Columbia's Answers to Plaintiffs' Interrogatories on Remand [ECF No. 231-4]. Defendant challenged the relevance of including facts regarding removals that occurred between 2005 and 2007 because that time period postdated the 2004 removal of the Doe children from their home. *See id.*

On February 17, 2016, Plaintiffs' counsel advised the District that the discovery dispute could be resolved "if the District would search its case files for the narrowed period of January 2003 through October 2004 and provide key dates including any pre-

removal court hearing date, and facts relevant to the basis for removal and any exigency."

Memorandum at 3.  On March 4, 2016, the District supplemented its response to

Interrogatory No. 9 by providing a 147-page chart containing "data pulled from CFSA's

electronic system (FACES)" regarding removals during the 2003-2004 time period.  *See*

Defendant District of Columbia's Supplemental Answers to Plaintiffs' Interrogatories

[ECF No. 231-5] at 5-6.  That supplemental response addressed some of the information

requested in Interrogatory No. 9 but did not provide "a description of any exigent

circumstances or immediate danger that played a role in the decision to remove."  *Id.* at

5-6.[3]

The parties, with the assistance of Magistrate Judge Kay, strove to resolve their discovery

dispute informally.  Beginning in June, 2016, Magistrate Judge Kay convened numerous

telephonic status conferences[4] in an effort to develop a workable plan for the production of

additional records — such as complaints, removal placement screens, and affidavits of

reasonable efforts — in response to Plaintiffs' Interrogatory No. 9.  Magistrate Judge Kay sought

to balance Plaintiffs' professed need for that information against the District's claim that it would

be unduly time-consuming and expensive to retrieve the information requested by Plaintiffs

because not all such information was available in a searchable form within the custody of CFSA.

Magistrate Judge Kay also conducted an *in camera* review of certain documents, but was unable

---

[3] Plaintiffs characterize the chart as "a table of removal cases that has columns regarding court hearings and orders, but no details of the hearings or orders, and no information on exigent or emergency circumstances."  Memorandum at 3.

[4] Telephone status conferences were held on: June 3, 2016; June 6, 2016; June 20, 2016; June 30, 2016; July 12, 2016; August 9, 2016; and August 16, 2016.

to ascertain whether the documents were responsive to all of the categories of information requested by the Plaintiffs.[5]

By August 16, 2016, it had become apparent that this matter could not be resolved informally.  Accordingly, Plaintiffs were permitted to file a motion to compel.  Plaintiffs' Motion was filed on September 16, 2016, and Defendant District of Columbia filed its Opposition on October 7, 2016.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 33 allows a party to serve written interrogatories that "relate to any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 33.  Rule 26(b), in turn, permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b).  Rule 33(d) permits a party to provide business records instead of preparing a narrative written response to an interrogatory.  Fed. R. Civ. P. 33(d); *see Haughton v. District of Columbia*, 161 F. Supp.3d 100, 102 (D.D.C. 2014).  Regardless of the form of the interrogatory response, "[a] party to whom an interrogatory is propounded 'must provide true, explicit, responsive, complete, and candid answers.'"  *Guantanamera Cigar Co. v. Corporation Habanos, S.A.,* 263 F.R.D. 1, 7 (D.D.C. 2009) (quoting *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007)).  A party who believes that the opposing party has failed to meet that obligation may, after conferring with the opposing party, move to compel a response.

---

[5] The documents were produced in folders within a large box, with no index or explanation of what was contained therein, and many of the documents had nothing to do with Plaintiffs' request; *i.e.*, they were medical or educational records.

*See* Fed. R. Civ. P. 37(a).  The moving party bears the burden of proving that the discovery

responses were incomplete.  *See Guantamera Cigar Co.*, 263 F.R.D. at 7.

### III.  DISCUSSION

Plaintiffs asserted that Interrogatory No. 9 was not unduly burdensome or overly broad

insofar as it sought "relevant and discoverable information[,]" and Plaintiffs had agreed to limit

the scope of the Interrogatory to the "twenty-two months prior to the removal of the Doe children

which was within the time frame of the events alleged in the Complaint and the period relevant

to a determination on the issue of municipal liability. . . " Memorandum at 7- 8.  Plaintiffs argued

that the information was necessary to resolve the question of municipal liability, and that if the

District did not provide responsive information prior to renewing its motion for summary

judgment, Plaintiffs would be forced to move pursuant to Federal Rule of Civil Procedure 56(d)

"to pursue the same discovery they [sought] via Interrogatory Nine" which would "unduly delay

resolution of this matter."  Memorandum at 9.

Plaintiffs proffered that the District had the option of providing responsive information or

producing documents in lieu of answering Interrogatory No. 9, and, if the District opted to

produce documents, Plaintiffs offered to "review the [documents] via counsel and extract the

relevant information themselves."  *Id.* at 11-12.  Plaintiffs claimed that any privacy concerns

raised by the District during the telephonic status conferences had been waived because such

concerns were "not timely asserted in the District's original response to Interrogatory No. 9."  *Id.*

at 12.  Plaintiffs did, however, agree to be bound by a protective order "to ensure that the privacy

of the information to be provided in response to Interrogatory No. 9 is protected."  *Id.* at 13.

Plaintiffs requested that the Court compel Defendant to provide a complete answer to

Interrogatory No. 9 or deem admitted "that the District's practice, policy, and custom during the

relevant period was to not seek a pre-deprivation hearing in removal cases, even when there was no exigency or bona fide emergency[.]" *Id.*

Defendant argued that its "overly burdensome" objection was appropriate in light of Plaintiffs' initial request for information spanning a period of five years, which was disproportionate to the needs of the case. Opposition at 10-11. The District reiterated its estimate of the time and effort needed to respond to Interrogatory No. 9, and concluded that "[t]he burden and expense necessitated in responding to Plaintiffs' Interrogatory No. 9, subpart d, far exceeds the amount in controversy." *Id.* at 11. The District asserted that Plaintiffs were not entitled to CFSA records because Rule 33 does not mandate such production but merely provides the "*option* of producing records to respond to an interrogatory." *Id.* at 11-12 (emphasis in original). Additionally, the District disputed Plaintiffs' entitlement to any of their requested stipulations. *Id.* at 19-20.

Notwithstanding its objections to Plaintiffs' Interrogatory No. 9, the District offered, as an alternative, to produce redacted records, subject to the entry of a protective order to govern the use and disclosure of information contained in the records. *See id.* at 12-13. The District requested that it be permitted sufficient time to "retrieve, review, redact, and produce the records." *Id.* at 13.

In their Reply, Plaintiffs summarized the District's proposal to produce records responsive to Interrogatory No. 9, subject to a protective order, as follows:

> [T]he District's Office of Attorney General (OAG) Child Protection Division (CPD) attorneys [will] produce to Plaintiffs, within five months, redacted versions of the relevant documents found in the District's Courtview computer database, including any Complaints/Complaint forms, Petitions, and Affidavits of Reasonable Efforts for the period January 2003 to October 2004, subject to [ ] an appropriate protective order.

Reply at 1.  Plaintiffs indicated that they "could accept this offer as a resolution of this discovery dispute and the instant Motion to Compel" subject to the following four conditions: (1) the District must agree that the narrowed time period was the appropriate period to be used to determine the nature of the practices, customs, or policies for purposes of municipal liability; (2) records would be produced "on a rolling basis," (3) redactions should only be "non-substantive;" and (4) the parties must agree to language for a protective order governing the release.  *Id.* at 1-2.

At the request of counsel, Magistrate Judge Kay set a telephone status conference for November 3, 2016, to discuss the parties' proposed resolution of their dispute regarding the District's compliance with Interrogatory No. 9.  *See* 10/31/2016 Minute Order.  The District agreed to draft a proposed Protective Order, and another telephone conference was set for November 16, 2016.  *See* 11/15/2016 Minute Order.  On November 17, 2016, the District filed a Notice of Proposed Order [ECF No. 235], attaching a proposed Protective Order [ECF No. 235-1], which was approved by the Court on November 17, 2016.  *See* Protective Order [ECF No. 236].

The Protective Order maintains the confidentiality of the records that are being produced by the District in response to Interrogatory No. 9; it provides for redaction of certain "identifying information;" and it limits the dissemination of the records to "counsel who are attorneys of record," their employees,  and court personnel.  Protective Order [ECF No. 236].  Subsequent to the execution of the Protective Order, the Court convened a telephone status conference on December 30, 2016.  *See* 11/16/2016 Minute Order.  During that telephone conference, the parties reported that the production was progressing slowly, in part because the records were coming from multiple sources, and Defendant indicated that the process was likely to take five months.  A follow-up telephone status conference was set for February 7, 2017, and the parties

were directed to file a status report by February 3, 2017, to identify and describe the outstanding discovery disputes.  *See* 1/12/2017 Minute Order.

On February 3, 2017, the parties filed a Joint Status Report [ECF No. 237].  The parties acknowledged that, after the Protective Order was entered, the District had "agreed to a rolling production of redacted Petitions and Complaints, concerning the removals of children from their homes for the period January 2003 through October 2004." 2/3/2017 Joint Status Report at 1. As of February 3, 2017, the District had "turned over several batches of documents, consisting of 759 Bates-numbered pages," and the parties anticipated that "the full production should be completed within four months."  *Id.*

During the February 7, 2017 telephonic status conference, the Court confirmed that the redactions on the records that had thus far been produced by the District conformed to the scope of the redactions identified in the Protective Order.  The parties indicated that the flow of information was appropriate, and that they anticipated that production would take several more months because the records originated from a variety of sources.  Counsel expressed no other concerns with the pace or scope of the production.  At the conclusion of the status conference, the Court scheduled the next status conference for April 10, 2017, with a status report due by April 5, 2017.

As the foregoing discussion demonstrates, the District's rolling production of records responsive to Interrogatory No. 9 under the terms of the November 17, 2016 Protective Order has, at this juncture, resolved the dispute upon which the Motion to Compel was based.  That rolling production of records for the period January 2003 through October 2004 reflects a compromise that both parties deemed acceptable, and essentially renders moot the dispute that gave rise to the Motion to Compel.  Consequently, the Court denies the Motion.  However,

because the production is ongoing (and expected to last several more months), such denial shall

be without prejudice to the Plaintiffs' ability to renew the Motion if disputes about the

sufficiency of the District's response arise in the future.  *See generally Food Lion, Inc. v. United*

*Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (noting that

trial courts exercise considerable discretion in handling discovery matters).  In the event that the

Plaintiffs believe that circumstances have arisen that would warrant renewal of the Motion, they

should first attempt to resolve the dispute with Defendant; if those efforts fail, they should

contact the Court to request a telephone status conference.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny without prejudice Plaintiffs' Motion to

Compel.  An appropriate Order accompanies this Memorandum Opinion.


DATED: March 31, 2017                    *Robin M. Meriweather*
                                         ROBIN M. MERIWEATHER
                                         UNITED STATES MAGISTRATE JUDGE